[No. 2545. Decided May 21, 1897.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES W. McCAULEY, *Appellant*.

EMBEZZLEMENT BY PUBLIC OFFICER — MAKING PROFIT OUT OF PUBLIC FUNDS — SUFFICIENCY OF EVIDENCE — SECONDARY EVIDENCE.

A verdict finding defendant guilty of unlawfully using public money in order to make a profit out of it is warranted by proof showing that, in addition to his account with a certain bank as city treasurer, he also had a personal account with the bank, and that his personal account was from time to time, by direction of the cashier, credited with different sums, in amount equivalent to interest at five per cent. per annum on the average daily balance of his account as treasurer; that the expense account of the bank was debited with the amount so credited to the personal account of defendant; that the amounts so credited to defendant

were all checked out by him; and that these various amounts were all entered in defendant's individual pass book, which was usually balanced once a month, at which time the checks drawn against his individual account were returned to him.

Where the evidence in a case shows that the accused is in possession of a document which is needed in evidence, the state is not obliged to give notice to produce in order to lay the ground for the introduction of secondary evidence.

The production of checks drawn on a bank is not necessary in order to render the books of the bank admissible in evidence for the purpose of showing that the charges made upon the books to the account of defendant, because of checks drawn thereon, are proper, when the proof shows that defendant's pass book was balanced from time to time with the books of the bank and found to agree therewith and that thereafter the pass book and checks were returned to defendant.

Appeal from Superior Court, Pierce County.—Hon. EMMETT N. PARKER, Judge. Affirmed.

*Taylor, Dennis & Luse,* and *Johnson Nickeus,* for appellant.

*A. R. Titlow,* for The State.

The opinion of the court was delivered by

GORDON, J.—Appellant appeals from a judgment of the superior court of Pierce county adjudging him guilty of the crime of unlawfully using public money in order to make a profit out of the same. The appellant was treasurer of the city of Tacoma, and as such came into possession of large sums of money. The information charges him with receiving and accepting interest upon. a deposit of the city's money made by him in the Columbia National Bank of Tacoma. The information is similar to the one considered by this court in *State v. Boggs,* 16 Wash. 143 (47 Pac. 417), and upon the authority of that case we hold that the demurrer which was entered below was properly overruled.

Numerous errors are assigned by appellant and from his brief we quote the following:

" This case is almost identical with the case of the *State v. George W. Boggs*, which has already been argued and decided in this court, and the assignment of errors is substantially the same."

We are satisfied with the decision reached in that case and deem it unnecessary and unprofitable to review it at this time. The only question argued in the brief in the present case is the sufficiency of the evidence to sustain a conviction. The information alleges that the offense was committed " on or about the 15th day of June, 1895, and between the first day of May, 1895, and the first of August, 1895."

The proof shows that, in addition to his account with said bank as city treasurer, the appellant also had a personal account with the bank, and that from time to time his personal account was, under the direction of the cashier, credited with different sums, which sums approximated in amount a sum equivalent to interest at five per cent. per annum on the average daily balance of his account as treasurer. It appears from the evidence that the cashier from time to time would enter upon deposit slips, such as are commonly used by bankers, what purported to be a deposit of funds by appellant to his personal account, and at the same time would make out a debit slip charging the expense, or profit and loss, account of the bank with the amount so credited to the personal account of the appellant. These credit and debit slips were, with a single exception, all made out by the cashier in his own handwriting. In one instance, however, the slips were made by Andrus, the teller of the bank, under the express direction of the cashier, so that it appears from the evidence that the amounts so credited to the personal account of the appellant were charged to the expense, or profit and loss,

account of the bank, and we think the proof was sufficient
to warrant the jury in finding that of the amount so credited
to the personal account of appellant no portion was repre-
sented by money or other funds actually deposited.  The
amounts so credited to him were all checked out by the
appellant.   These various amounts were also entered to
the credit of appellant in his individual pass book, which
the evidence shows was usually kept in the cashier's desk.
This pass book was usually balanced  once a month, at
which time appellant's checks would be returned to him.

Bearing upon the question of appellant's knowledge of
the transactions already referred to the teller of the bank
testified as follows:

".  .  .   part of the time Mr. McCauley's private in-
dividual pass book was kept in Mr. Peters' desk [Mr. Pet-
ers was the cashier], and he would go to his desk and Mr.
Peters would take out the book and make a credit entry
in it, and Mr. McCauley would say, 'What month is that
for?' and Mr. Peters would say a certain month.   I don't
remember what month he said to him—and then Mr. Mc-
Cauley would say, 'Have you given me credit for such
and such a month,' naming the month, and Mr. Peters
would point to another credit entry and say, 'That is for
that month,' and usually Mr. Peters would hand the book
to me or the bookkeeper with some debit and credit slips
to make entries on the books to correspond with the entries
on the pass book."

Again he testifies:

" Sometimes he [Peters] would come in and put these
slips on the spindle himself, and give the book to the book-
keeper, and I would always look at them to see if they were
entered  correctly."

The books of the bank were made up from these debit
and credit slips.   The case went to the jury upon the evi-
dence introduced by the state.

The appellant complains of different rulings made by

the court upon the introduction of evidence, all of which have been examined, but only one of which we deem of sufficient importance to warrant particular notice. It is urged that the court erred in admitting the bank books and the testimony of the teller and bookkeeper in reference to the payment of appellant's checks, the checks themselves not being produced or shown by the evidence to have been destroyed. The evidence satisfactorily shows, however, that these checks were returned to the defendant and went into his possession at the different times when his pass book was balanced. They were, therefore, traced into his possession, and the further contention of the appellant, that "it was error on the part of the court to admit secondary evidence until a demand had been made upon the defendant and he had refused, after reasonable notice, to produce such checks," cannot be sustained for two reasons: (1) It was beyond the power of the court to enforce such a demand for the simple reason that the defendant could not be compelled to furnish evidence against himself; and while upon this question of giving notice to a defendant in a criminal case to produce papers or other exhibits there are conflicting decisions, and it is probably true that a majority of the cases require that such notice be given, we are unwilling to adopt it as an invariable rule. As was said by the supreme court of Indiana in *McGinnis v. State*, 24 Ind. 500:

"It is difficult to perceive what benefit could result, either to the state or the defendant, from the giving of such a notice, while to the defendant it is liable to work a positive injury, by producing an unfavorable impression against him, in the minds of the jury, upon his refusal to produce it after notice."

The rule is thus in Rice on Evidence (vol. 3, p. 45):

"If the indictment itself alleges that the accused is the custodian of the document needed in evidence or *where*

*the evidence in the case shows it to be in his possession* or in that of an accomplice who refuses to produce it on the ground of its criminating tendency, *the state is not obliged to give notice to produce.*"

(2) We think it was not indispensable to the introduction of the books that the checks should be produced. As already stated, the proof showed that appellant's pass book was balanced from time to time with the books of the bank and found to agree with such bank books, and that thereafter the book was returned to appellant, together with the checks. This, we think, was competent proof for the purpose of showing that the charges made upon the books of the bank to the account of the appellant, because of checks drawn by him on his account, were proper and legal charges. It also was competent proof tending to show appellant's knowledge of the credits made to his personal account.

The evidence in this case has been carefully considered by us and we think it was abundantly sufficient to sustain the verdict of the jury and the judgment of the court entered upon it, and we do not think that there was any prejudicial error committed by the court in the reception of evidence or in its subsequent charge to the jury. It follows that the judgment of conviction must be affirmed.

SCOTT, C. J., and REAVIS, ANDERS and DUNBAR, JJ., concur.

OPINION ON RE-HEARING.

REAVIS, J.—The single question which was argued before us at this time was the admission of the bank books introduced in evidence by the state, which were made in part from the checks of appellant, and without production of the checks and a showing of any demand upon appellant to produce the same. We shall not now review any other

feature of the case, which was fully discussed in the opinion upon the original hearing. *Ante*, p. 88 (49 Pac. 221).

There was competent testimony sufficient to justify the verdict of the jury without the introduction of the bank books, now the subject of discussion. But the question occurred on appellant's petition for a re-hearing whether, considering that the evidence fully justified the verdict without the books referred to, the introduction of the books, if incompetent, might have injured appellant, and the court deemed further argument advisable. Perhaps the rule with reference to the notice to defendant to produce original papers upon a criminal trial on the ground that he has been sufficiently advised in the indictment and course of the trial was too broadly stated in the opinion of the court upon the original hearing; but we now think the books in question were properly admitted by the superior court in the nature of admissions of the defendant that he had knowledge of the credits for interest entered on the bank books in his favor on his personal account for city funds deposited in the bank; and further, defendant, having with the cashier of the bank examined his pass book as made up from the debit and credit slips showing deposits and checks against the same, and the balance of account being shown thereon, and the bank books in question having been made up from the same source, and showing the same balances, defendant, without a contrary showing on his part, which was not made, admitted the correctness of these books. Such admissions were entitled to go before the jury, and their weight would be a matter for the consideration of the jury. Debit and credit slips used by the bank may, by the admission of the defendant, become primary evidence of the items shown upon them. Defendant had the right to contradict anything in the nature of an admission made upon the books, but did not do so. We are unable,

from the re-hearing, to arrive at any other conclusion than upon the original hearing, and the judgment of the superior court is affirmed.

SCOTT, C. J., and DUNBAR, ANDERS and GORDON, JJ., concur.