(No. 5649.   Decided July 10, 1905.)

THE STATE OF WASHINGTON, *Respondent*, v. JOHN MANN, *Appellant*.[1]

CRIMINAL LAW—TRIAL—WITNESSES—EXCLUSION OF CODEFENDANT FROM ROOM.   The exclusion from the court room of one jointly informed against with defendant, together with all other witnesses whose names were indorsed as witnesses for the state, is not prejudicial error, where, upon the conclusion of the opening statement of the prosecuting attorney, such codefendant was permitted to return and remained throughout the trial, and there is no claim that prejudice resulted.

CRIMINAL LAW—JOINT COMPLAINT AGAINST HUSBAND AND WIFE— CONSPIRACY—ARSON—INFORMATION—SUFFICIENCY.   The information charging the defendant with aiding and abetting his wife in the commission of arson, is not insufficient in that it attempts to charge a conspiracy by a husband and wife, since it charges a consummated offense and not a conspiracy to commit an offense.

EVIDENCE—BEST AND SECONDARY.   Oral evidence of the contents of an insurance policy is admissible when the policy is in the possession of the accused and on demand he fails to produce it, although the witness made a record of its contents and was compelled to refer thereto to refresh his memory.

[1] Reported in 81 Pac. 561.

TRIAL—EVIDENCE—CROSS-EXAMINATION OF WITNESS. It is improper to ask upon cross-examination if the witness is not the "notorious R who was tarred and feathered at G."

CRIMINAL LAW—ARSON—EVIDENCE—SHIPPING GOODS FROM BUILDING—TIME—REMOTENESS. Upon a prosecution for arson, evidence that the accused shipped merchandise from the building, five and seven days before the fire, is admissible to show motive and to connect the accused with the crime, its remoteness in point of time only lessening its force.

CRIMINAL LAW—EVIDENCE—ADMISSIONS—VOLUNTARY. Evidence of admissions made by the accused to officers while in custody are admissible without a direct statement that they were not made under the influence of fear produced by threats, when it appears from all that occurred that they were voluntarily made.

CRIMINAL LAW—EVIDENCE—ADMISSIONS—CONSPIRACY. Upon a prosecution of a husband and wife for a consummated offense of arson, admissions of the wife, implicating the husband, are not objectionable as an admission of one conspirator made after the conspiracy is at an end, since the rules relating to conspiracy have no application.

SAME—PRINCIPAL AND ACCESSORY—ADMISSIONS—BY PRINCIPAL. In a separate prosecution of a husband as accessory to the crime of arson committed by his wife, admissions made by the wife implicating him are admissible in evidence, if they would have been competent against her, since it is incumbent on the state to prove her guilt.

SAME—HUSBAND AND WIFE—PRIVILEGED COMMUNICATIONS. Such admissions are not objectionable as permitting the wife to testify against the husband, voluntary confessions not being within the rule of priviledged communications.

APPEAL—REVIEW—HARMLESS ERROR. Error in the admission of a letter in evidence is harmless, when its contents had been previously testified to without objection.

APPEAL—REVIEW—VERDICT. The weight and credibility of the evidence is entirely for the jury and trial judge, and their decision is conclusive on the supreme court.

TRIAL—COMMENT ON EVIDENCE. It is not unlawful comment on the evidence, within the meaning of the constitution, for the trial judge, upon ruling on the admissions of evidence, to reply to suggestions of counsel, respecting the value of reputation, that it may be lost in a minute.

Appeal from a judgment of the superior court for Lewis county, Chapman, J., entered October 31, 1904, upon a trial and conviction of the crime of arson. Affirmed.

*Frank Burch* and *George E. Rhodes,* for appellant.

*J. R. Buxton* and *C. H. Forney,* for respondent.

FULLERTON, J.—The appellant and one Nettie Mann were jointly informed against for the crime of arson, the charging part of the information being as follows:

"She, the said Nettie Mann, in Lewis county, state of Washington, on to wit: the 17 day of August, A. D. 1904, and within three years prior to the filing of this information, in the county of Lewis, state of Washington, did then and there feloniously, unlawfully, wilfully and maliciously set fire to and burn that certain two story house building, situate in the city of Centralia, Lewis county, Washington, the property of others, to wit: Thomas Cooling and Sarah Cooling: said two story house building being then and there occupied by the said Nettie Mann and John Mann, and he, the said John Mann, though not personally present at the time said building was fired, did in manner and form aforesaid, unlawfullly, feloniously, wilfully and maliciously procure, aid, counsel, incite, command and abet the said Nettie Mann to so unlawfully, feloniously, wilfully and maliciously fire and burn the said two story building, contrary," etc.

On being arraigned, the accused pleaded not guilty, and demanded separate trials, which were granted them by the court. The state elected to try the appellant first, and his trial resulted in a verdict and judgment of guilty, from which he appeals to this court.

Taking up the errors assigned in the order they are discussed in the brief of appellant, the first to be noticed is the contention that the court erred in excluding Nettie Mann from the court room, during the opening statement to the jury made by the prosecuting attorney. From the record it appears that, after the jury had been impaneled and sworn, the prosecuting attorney moved that all of the witnesses,

both for the state and for the defendant, be excluded from the court room during the trial. Among the witnesses for the state whose names were indorsed on the information was Nettie Mann. The appellant's counsel called attention to this fact, and asked that the rule of exclusion be so modified as not to include her. After some colloquy between the appellant's counsel and the court, the court stated, although no objection to her remaining was made on the part of the state's counsel, that the rule applied to her as well as to all of the other witnesses, and she was taken from the court room by the officers who had her in charge, she being then in custody. The prosecuting attorney thereupon made his opening statement to the jury, at the conclusion of which the court announced that, in view of the opening statement, he would modify his ruling in regard to the exclusion of witnesses, in so far as to permit Nettie Mann to be present in the court room during the trial, if she so desired. She was then brought into the court room, and the trial was proceeded with by the introduction of testimony on the part of the state.

This is all that the record shows regarding the matter, but the appellant says that the purpose of the prosecuting attorney in indorsing the name of Mrs. Mann on the information was to enable him to invoke the rule of exclusion against her, and thus deprive him of the benefit of her assistance while on his trial; and he argues that this court ought to set its seal of disapproval on such conduct by refusing to permit a conviction to stand where such a course has been pursued. But we are unable to find in the record anything which justifies this animadversion on the prosecuting attorney. His conduct seems to us in nowise blamable. He did not insist that the witness be excluded, nor did he debate the question, but left it entirely to the discretion of the trial court on the reasons urged by the appellant's counsel. He not only had the right to indorse the name of Mrs. Mann on the information, but, if he be-

lieved that she would prove a material witness for the state,
it was his duty to do so. There can be, therefore, no ground
for the claim that the appellant was prejudiced by the con-
duct of the prosecuting officer. Nor was the ruling other-
wise erroneous. Whether or not any particular witness shall
remain in the court room pending the trial of a criminal
cause, rests in the sound discretion of the trial court, to
be reviewed only for an abuse of such discretion. Here, it
is not even claimed that the appellant was in any manner
prejudiced by the action of the court, and it is idle to say
that such action is ground for reversal.

It is next assigned that the court erred in refusing to
sustain the appellant's objection to the introduction of any
evidence by the state, on the ground that the information
did not state facts sufficient to constitute a crime. The
objection to the information is that it necessarily charges a
conspiracy, and that, as the defendants were shown to be
husband and wife, they could not be guilty of a conspiracy.
But we think the appellant is mistaken as to the charge
contained in the information. The information charges a
consummated offense, not a conspiracy to commit an offense.
And while it may be true that a husband and wife cannot
be convicted of having conspired together to commit an
offense, yet if they commit an indictable offense, although
the offense is the result of a conspiracy on their part, they
can be tried and convicted for the consummated offense.

A Mr. Drummond, while on the witness stand for the
state, was asked concerning a certain insurance policy issued
on the goods of the appellant, and testified to the effect that
he had issued a policy on such goods as agent of a New
Hampshire company, and that he had kept a record of the
policy, as was his custom. He was then asked if he could
state, independently of his record, how the insurance was
divided on the different articles insured. On answering
that he could, he was told to so state. To this the appellant
objected on the ground that the record he had kept of the

policy was the best evidence. The court overruled the objection, and permitted the witness to answer. This ruling is assigned as error. As this question called for the contents of the insurance policy, it is plain that, as between the witness' memory of what it contained and the memoranda of its contents made by him, his memory was the best evidence, even though he had been compelled to use his memoranda to refresh his memory. But perhaps the real objection is that the policy itself furnishes the best evidence of its contents. If, however, we concede that this objection was made, it does not follow that it was error to admit the evidence. The policy was in the possession of the appellant, and secondary evidence of its contents was admissible, after he had been served with notice to produce it and had failed to do so. *State v. McCauley,* 17 Wash. 88, 49 Pac. 221, 51 Pac. 382.

During the cross-examination of witness Rhodes, he was asked the following question: "Are you not the notorious Tuck Rhodes who was tarred and feathered at Grays Harbor and run out of the country?" To this question the state interposed an objection, which was sustained by the trial court. There was no error in the court's ruling. While the latitude permitted a cross-examiner is extensive, it has its limitations. We think it would be too much to say that its bounds extended to questions of this character.

The state was permitted to show, over the objection of the appellant, that the appellant caused to be shipped by rail, from the city of Centralia to the city of Tacoma, certain trunks and boxes, which were found to contain merchandise taken from the building which was afterwards burned. Certain of these shipments were made some seven days before the fire occurred, and certain others some five days before that time, and it is urged that these times were too remote from the time of the fire to render the testimony admissible. But we think the objection unfounded. The evidence was admissible as tending to show motive, and to connect the

appellant with the crime charged. The remoteness of the removal of the goods from the time of the fire might tend to lessen its probative effect, but that was a question for the jury; it did not tend to render the evidence itself inadmissible.

The court permitted the state to show certain inculpatory statements made by the appellant, concerning the crime charged against him, to the officers who had him in custody. It is alleged that this was error, because it was not shown that the appellant was not under the influence of fear produced by threats when he made them. But we think counsel mistakes the evidence. The witness testifying to the statements purported to state all that occurred at the time the admissions were made, and from the whole of his evidence it is made clear that the statements were voluntarily made. The question whether a defendant is under the influence of fear produced by threats, when he makes statements imputing guilt of the crime charged against him, is a mixed question of law and fact, and the proper way to ascertain the fact is to have the witness detail the circumstances surrounding their making, and all that was said and done preliminary thereto which led to their making. From this the court is much better able to judge whether the admissions are admissible under the statutory rule than it would be were a question asked in the words of the statute and the opinion of the witness taken thereon.

Subsequent to the commission of the offense charged in the information, Nettie Mann made certain confessions and admissions with reference thereto which tended to incriminate both herself and the appellant. These were admitted in evidence, over the objection of the appellant, and their admission is assigned here as error. Several reasons are urged against the admissibility of these confessions, but we shall notice but two of them. The first is that the confession of one conspirator, made after the conspiracy has come to an end, cannot be given in evidence as against a joint conspirator. A long list of cases is cited in support of this

contention, and, undoubtedly, the rule is correctly stated on the case assumed by the appellant. But, as we have before pointed out, the appellant was informed against and tried for a consummated offense, not for conspiring with another or others to commit an offense, and the rules applicable to the admission and introduction of evidence in the one case are not the same as they are in the other. A criminal conspiracy is a combination between two or more persons to do a criminal or an unlawful act, or a lawful act by criminal or unlawful means. No overt act is necessary to constitute the offense, the gist of the offense being the unlawful conspiring together. Hence, in the case at bar, had the charge against the appellant been for engaging in an unlawful conspiracy only, he could well say that the subsequent confessions and admissions of one of the conspirators were not admissible as evidence against him. But here the person whom he now assumes to be a joint conspirator was charged with the commission of a substantive offense, namely, the crime of arson, and the appellant was charged with aiding and abetting her in the commission of that crime. In order to convict the appellant it was necessary for the state to prove the crime as alleged; that is to say, it must show, first, that Nettie Mann committed the crime of arson; and, second, that the appellant aided and abetted her therein. The state, in order to prove the first of the requisites, could resort to any evidence which would have been admissible had Nettie Mann herself been upon trial. This would include her confessions and admissions, as well as any other competent evidence tending to prove the crime as laid.

But it is thought the confessions were inadmissible because they implicated the appellant. Such is not the rule. The jury are ordinarily entitled to confessions as they are made, and in this case to have eliminated from the confessions all references to the appellant would have left them unintelligible and incompetent for any purpose. The authorities, so far as we have been permitted to examine them,

uniformly hold that the acts, declarations, and confessions of the principal are admissible as evidence on the separate trial of the accessory. Mr. Wharton lays down the rule as follows:

"As at common law the conviction of the principal is a condition precedent to the conviction of the accessary, it is necessary, on the trial of the accessary, to put in evidence the record of the conviction of the principal. This record is, however, only *prima facie* proof of the guilt of the principal; and may be impeached by proof that such conviction was erroneous. Judgment must have been entered on the verdict to make the record admissible. The burden of proving that the principal was not guilty is on the accessary, but the accessary is not restricted to proof of facts shown on the former trial. On the other hand, it is admissible for the prosecution to put in evidence facts tending to show the principal's guilt. In most jurisdictions proof of such conviction is by statute no longer necessary in order to convict the accomplice or accessary." Wharton, Criminal Evidence, § 602.

In *Smith v. State,* 46 Ga. 298, it was held that the confessions of the principal felon, as to his own guilt, are competent evidence to show that fact on the trial of the accessory, if they would have been competent had the principal been on trial. In *Self v. State,* 6 Baxter (Tenn.) 244, it was said that, upon the trial of an accessory before the fact, the principal not having yet been convicted, it devolved upon the state to prove that the principal was guilty of the crime charged, as a necessary prerequisite to the conviction of the defendant, and that any evidence was competent for that purpose that would have been competent had the principal been on trial. To the same effect is *Givens v. State,* 103 Tenn. 648, 55 S. W. 1107. In the latter case the court said:

"Many errors are assigned upon the action of the lower · court in admitting or excluding testimony. Of these errors the larger and altogether the greatest number are predicated upon the idea that the second count in the indictment, charg-

ing Givens with being an accessory before the fact, was not
good, and should have been quashed. Having, however, held
that this count was good, these objections are necessarily
removed. For all the testimony which would have been
competent to show Dawn, as principal, guilty of murder,
if he had been on trial, was equally competent against
Givens, thus charged as being accessory before the fact.
Dawn, the principal, had already been tried and convicted.
In such a case the rule is well settled that when afterwards
the accessory before the fact is put on trial the proceedings
are to be conducted as if the principal was again on trial,
and the case against the accessory will not be gone into until
the case against the principal is established. *Self v. State,*
6 Bax., 244. Under this rule confessions of Dawn, though
not made in the presence of Givens, under the second count
were competent, not to fix guilt on plaintiff in error, but to
show the guilt of Dawn and the grade of his offense. *Self
v. State, supra ;Morrow v. State,* 14 Lea, 484; Wharton's
Crim. Ev., Sec. 702; 2 Bishop on Crim. Procedure,
Sec. 13."

The appellant was, of course, entitled to have his rights
safeguarded by cautions during the course of the trial and
by the instructions of the court to the jury, but no complaint
is made that the court was delinquent in this respect, and
the record affirmatively shows that it was not.

It is next urged that these confessions were inadmissible
because it was shown that Nettie Mann was the wife of the
appellant, and that to admit her confessions in evidence was
to permit the wife to testify against her husband, contrary
to the prohibition contained in the statute. But we think
this objection is without merit. Voluntary confessions are
not within the rule of privileged communications.

A witness for the state was cross-examined concerning
her feelings towards the appellant, and stated, in effect, that
she disliked him. On her redirect examination she was
asked to state the reason for her dislike, and answered that
she had received a letter from him making certain state-
ments and, without objection on the part of the appellant,

repeated them to the jury. She was then asked to produce the letter and did so, whereupon the state was permitted to put it in evidence over the objection of the appellant. It is contended, we think correctly enough, that the letter was inadmissible, but we do not think it reversible error. Its contents had been stated by the witness without objection, and the prejudice produced thereby, if any, could not have been enhanced by reading the letter.

It is next contended that the court erred in overruling the appellant's motion for nonsuit, and his challenge to the sufficiency of the evidence. But a perusal of the record convinces us that there was abundant evidence to sustain the verdict, and this is as far as we have any right to go into the question. The weight and credibility to be given the evidence is entirely for the jury and trial judge, and their findings thereon are conclusive here.

Lastly, it is contended that the court commented on the evidence in violation of the prohibition in the constitution. The appellant called a witness who testified he had known the appellant at Tacoma, in 1886 or 1887. He was then asked concerning the appellant's general reputation for honesty and integrity at that time. This was objected to as being too remote, whereupon the following colloquy occurred:

"Mr. Burch: I think under this class of cases we have a right to go back as far as we can to show good reputation and then bring it down. The Court: It may go back, yes; but that is going back pretty far. Mr. Burch: Yes sir; but a reputation is not gained in a minute. The Court: That is true, but the trouble is it may be lost in a minute, though. Well, I will overrule the objection and allow the testimony."

The remark of the court to the effect that a reputation may be lost in a minute constitutes the comment complained of. We think, however, there was no error in the remark of the court. Aside from the fact that the remark could hardly be said to be a comment on any testimony before

the jury, it was not addressed to the jury, but to counsel, and we have held that remarks of the court as to facts in the case, addressed to counsel in reply to suggestions concerning the admission of testimony, are not comments on the facts, within the meaning of the constitution. *State v. Surry,* 23 Wash. 655, 63 Pac. 557.

Our examination of the record convinces us that the appellant had a fair and impartial trial, and that the judgment appealed from should be affirmed. It is so ordered.

MOUNT, C. J., HADLEY, CROW, and DUNBAR, JJ., concur.