[No. 9597.   Department One.   January 4, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v.

HANNAH BEEBE, *Appellant*.[1]

CRIMINAL LAW—EVIDENCE—DECLARATIONS OF CODEFENDANT.   Upon a separate trial of one charged as an accessory to a homicide, confined to acts committed at the time and place of the killing, it is error to admit evidence of threats against the deceased and of declarations in the nature of confessions, made by the principal or codefendant both before and after the homicide at times when the accessory was not present.

HOMICIDE—MANSLAUGHTER—DEFINITION—EVIDENCE—QUESTION FOR JURY.   Under Rem. & Bal. Code, § 2395, defining manslaughter in broad terms as including all homicides other than those specified in Id., §§ 2392, 2393 and 2394, the court cannot determine the degree and decide, as a matter of law, that the defendant was necessarily guilty of one of the higher degrees, where it appears that defendant was having a dispute with the deceased over a fence, called his attention to the gun carried by defendant's daughter who evidently heard the remark and who had made threats against the deceased; since defendant's guilt did not depend entirely on the presence or absence of design on her part, the same being a question for the jury.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 16, 1910, upon a trial and conviction of manslaughter.   Reversed.

*Martin Rozema*, for appellant.

*Fred Kemp* and *Ludington & Kemp*, for respondent.

PARKER, J.—Della Totten and Hannah Beebe were jointly charged with the crime of murder in the first degree, by information filed in the superior court for Chelan county, as follows:

"That the said Della Totten, in the county of Chelan, state of Washington, on the tenth day of August A. D. 1910, then and there being, then and there wilfully, unlawfully and feloniously of her deliberate and premeditated malice, and

[1]Reported in 120 Pac. 122.

with a premeditated design to effect the death of one
James E. Sutton, killed said James E. Sutton, by then and
there wilfully, feloniously and of her deliberate and pre-
meditated malice and with premeditated design to effect his
death, shooting and mortally wounding the said James E.
Sutton with a shot-gun which she, the said Della Totten,
then and there held in her hands; and that said Hannah
Beebe then and there, at the said felonious shooting and kill-
ing of said James E. Sutton by said Della Totten as afore-
said, wilfully, unlawfully, feloniously and of her deliberate
and premeditated malice and with a premeditated design to
effect the death of said James E. Sutton, was present, and
that she, the said Hannah Beebe, did then and there felo-
niously, wilfully and of her deliberate and premeditated malice
and with premeditated design to effect his death, counsel, aid,
incite, abet and encourage the said Della Totten in the said
felonious shooting and killing of said James E. Sutton, con-
trary to the form of the statute in such cases made and pro-
vided, and against the peace and dignity of the state of
Washington."

Hannah Beebe was awarded a separate trial, which re-
sulted in her conviction of manslaughter, upon which she was
sentenced for a term of not less than one nor more than two
years in the penitentiary. From this conviction, she has
appealed.

Appellant is a widow, about 69 years old, and Della Totten
is her married daughter. On August 10, 1909, and for
some years prior thereto, they lived within a few rods of
each other, each upon their own land, some five miles south-
west of the town of Cashmere, Chelan county, in what is
commonly known as Bender canyon. James H. Sutton, and
his family consisting of several boys and girls, one of whom
was James E. Sutton, the deceased whose death is charged
to appellant and her daughter, lived upon their ranch at the
head of the canyon above and adjoining the land of appel-
lant. For some years prior to August 10, 1910, the Sutton
family had been accustomed to use a private road running
across appellant's land, which constituted their most con-

venient way out to the town of Cashmere. This road also furnished a convenient way to other land belonging to the Sutton family, situated in the canyon below the land of appellant. Photographs of this road offered in evidence indicate that it is a well traveled road and has been used a great deal.

There does not appear to have been any effort on the part of appellant to close this road to the Suttons, until shortly prior to August 10, 1910. On August 9, 1910, appellant built a wire fence across the road within the boundaries of her own land, and placed there a sign containing the words, "No trespassing." This fence and sign were placed in view of the homes of appellant and her daughter, and apparently not exceeding two hundred yards therefrom. During the evening of that day, some one cut the wires and opened the fence so as to permit the usual free passage along the road, and also removed the sign. The following day, August 10th, appellant and her daughter concluded to rebuild a fence across the road and put up another sign. Early in the afternoon of that day, probably about one o'clock, appellant went to the place alone, carrying some tools, and about fifteen minutes later her daughter followed, carrying a shot gun and a new sign which she had prepared. One or the other also carried a lunch, their intention evidently being to remain a considerable time. The daughter, Mrs. Totten, was somewhat skilled in the use of the gun, having used it in shooting game and small predatory animals. Appellant testified that she did not know that her daughter was going to bring the gun along until she arrived with it, and there is no evidence showing otherwise. They then proceeded to rebuild the fence and put up the new sign, completing their work in about an hour and a half. They then stationed themselves a short distance away upon the hillside to the east of the road and fence they had constructed, where they remained until the shooting of the deceased occurred late in the afternoon.

About three o'clock, the elder Sutton drove down the road

from his place with a load of wood, and upon finding the road closed by the wire fence and the two women there apparently on guard, he unhitched his team from the load of wood, leaving it near there, and returned with his team. Some time thereafter, probably an hour and a half or two hours, James E. Sutton, the deceased, his sister and a younger brother drove down the road on the way to their garden, on their land in the canyon below the land of appellant. When they arrived at the fence across the road, the deceased got out of the buggy, took an axe and a hammer out of the back part of the buggy, and proceeded to cut the wires and remove the fence from across the road. Appellant then came down from where she and her daughter were, and called his attention to the sign, to which he replied, indicating that he did not care for the sign, and proceeded with his work of cutting the wires. Appellant then pointed to the hillside where the daughter, Mrs. Totten, stood with the gun, and asked him if he saw the gun, to which he made no answer, but proceeded with his work of cutting the wires. While he was at this work, appellant was hitting at his hands with an axe, evidently trying to interfere with his cutting the wires. While this was going on, Mrs. Totten made some remark about shooting him. Some words also passed between her and the sister who was sitting in the buggy, when Mrs. Totten threatened to shoot the sister if she did not keep still, at the same time pointing the gun at her. About the time the deceased finished cutting the wires. Mrs. Totten called to her mother to get out of the way and she would shoot him. He then looked towards Mrs. Totten who was coming down the hill towards him. He dodged two or three times, evidently trying to get behind a large stump near the roadside, and was then shot by Mrs. Totten in the side of his neck, resulting in his death almost instantly. Mrs. Totten had advanced to within about ten feet of him when she fired the fatal shot. These facts are not seriously disputed. There are no facts shown by the record indicating

that appellant had anything to do with this fatal occurrence other than what occurred then and there.

It is contended by counsel for appellant that the trial court erred in admitting evidence, over their objections, of threats made by Mrs. Totten against members of the Sutton family some time prior to the killing of the deceased, and also evidence of statements made by Mrs. Totten in the nature of admissions on her part, tending to show her own guilt, after the killing of the deceased. These threats and statements were all made out of the presence of appellant, and we are not able to find in the record any evidence tending to show concerted action on their part looking to the injury of any member of the Sutton family, save their acts occurring at the time of the killing of the deceased which we have above summarized. These threats and statements of Mrs. Totten's seem to have been admitted in evidence by the trial court upon the theory that any evidence tending to show Mrs. Totten's guilt was admissible against appellant whether it tended directly to show her guilt or not. This theory seems to have been rested upon the holding of this court in *State v. Mann*, 39 Wash. 144, 81 Pac. 561.

We think, however, that there was reason for the admission of such evidence in that case which is not present here. In that case, Mann was charged with being accessory before the fact, and all of the proof in support of the charge was in accord therewith. He was neither charged with nor proven to have been present at the burning of the building, the crime being arson. In that case, the charge appears to have been made in conformity with the views of this court expressed in *State v. Gifford*, 19 Wash. 464, 53 Pac. 709, where it was held that, notwithstanding our law has abolished all distinctions between accessories before the fact and principals in crime (Rem. & Bal. Code, § 2007), it is necessary to charge the facts constituting the crime; and hence, necessary to charge a defendant as accessory before the fact if proof of being such accessory only is relied upon for con-

viction.   It is pointed out in that decision that the state con-
stitution seems to require such facts to be charged where it
is sought to connect the accused with the crime by proof of
prior acts, instead of by proof of acts at the time the crime
is consummated.   No act is here charged against appellant
save such as occurred at the time and place of the consum-
mation of the crime.   The charge is, that appellant "then
and there at said felonious shooting and killing of said
James E. Sutton . . . was present, and that she the said
Hannah Beebe did then and there, . . . counsel, aid and
abet and encourage said Della Totten in said felonious shoot-
ing . . ." etc.   It is true that, in form, appellant is
charged as an aider and abetter.   This, however, is in effect,
charging her as principal; since it is confined to acts com-
mitted by her at the time and place of the killing of the de-
ceased.   Under this charge, her guilt is not dependent on
the guilt of Mrs. Totten, who, under the old law, would be
technically designated as principal in the first degree.   Rem.
& Bal. Code, §§ 2007, 2260; 2 Am. & Eng. Ency. Law (2d
ed.), 30; 1 McClain, Criminal Law, § 216; *Williams v.
United States*, 1 Ind. Terr. 560, 45 S. W. 116; *State v.
Jarrell*, 141 N. C. 722, 53 S. E. 127.

It logically follows that evidence which bears only upon
Mrs. Totten's guilt is irrelevant to appellant's guilt.   The
right of appellant to a separate trial, as guaranteed by
Rem. & Bal. Code, § 2161, is, in substance, the right to have
her guilt or innocence determined from proof of acts for
which she alone is responsible.   Apparently the very pur-
pose of the law in giving her a separate trial, upon demand,
is to free her from the possible prejudicial effect of evidence
which might be admissible to prove facts tending only to
show Mrs. Totten's guilt, which would not be admissible if
appellant were being tried alone.   If the right of separate
trial does not secure this protection, then such right is of
but little value.   The confession of one codefendant was
held inadmissible as against the other, upon a separate trial,

in *State v. McCullum*, 18 Wash. 394, 51 Pac. 1044. In *State v. Nist, ante* p. 55, 118 Pac. 920, some observations are made in harmony with this view, and the case of *State v. Mann, supra*, distinguished from cases of this nature.

The authorities seem to be quite. uniform in holding, in cases of this character, that prior threats and statements, as well as subsequent admissions and statements made by one codefendant, are not admissible against the other, upon a separate trial, and that such statements are regarded as hearsay as much as if they had been made by a stranger. Of course it needs no argument to show that such evidence would almost certainly be prejudicial to the defendant on trial. Among authorities supporting this view, we note the following: *Langford v. State*, 130 Ala. 74, 30 South. 503; *State v. May*, 142 Mo. 135, 43 S. W. 637; *Willis v. State*, 67 Ark. 234, 54 S. W. 211; *State v. Hickman*, 75 Mo. 416; *Shelby v. Commonwealth*, 91 Ky. 563, 16 S. W. 461; *State v. English*, 14 Mont. 399, 36 Pac. 815; *Mixon v. State* (Tex. Cr.), 31 S. W. 408; *People v. Kief*, 126 N. Y. 661, 27 N. E. 556; *Martin v. State* (Tex. Cr.), 30 S. W. 222; *Ford v. State*, 112 Ind. 373, 14 N. E. 241. We conclude that the admission of the evidence tending to show statements made by Mrs. Totten, both before and after the killing of the deceased, was error prejudicial to the rights of appellant, such as calls for a new trial in her behalf.

It is contended that the facts developed in this case are such that it can be determined, as a matter of law, that appellant is not guilty of manslaughter, but that she was necessarily guilty of one of the higher degrees of homicide or else free from all guilt, and the jury having, in effect, acquitted her of the higher degrees, she should now be discharged. We cannot agree with this contention, in the light of the facts above summarized. The crime of manslaughter under our law, as at present defined, covers a very wide range of degrees of guilt. Except as applied to certain specific acts with which we are not here concerned, man-

slaughter is defined, not by an affirmative statement of inclusion, but by a statement excluding other homicides, as follows:

"In any case other than those specified in sections 2392, 2393 and 2394, homicide, not being excusable or justifiable, is manslaughter.

"Manslaughter is punishable by imprisonment in the state penitentiary for not more than twenty years, or by imprisonment in the county jail for not more than one year, or by a fine of not more than one thousand dollars, or by both fine and imprisonment." Rem. & Bal. Code, § 2395.

It will thus be seen that manslaughter may consist of a very slight or a very great degree of guilt on the part of the accused. This was fully recognized by the learned trial judge in the light sentence imposed upon appellant. In view of the knowledge of appellant that her daughter had the gun; her altercation with the deceased, and her calling his attention to the gun, the daughter evidently hearing this remark by appellant; the threats of the daughter, made very near the same time, and the shooting of the deceased by the daughter very soon thereafter, we think might warrant the jury in believing that appellant was not entirely free from responsibility for the death of the deceased, though they might also believe that she had no design to assist in causing his death. We think it is for the jury to say whether or not any degree of guilt attached to appellant in this regard. The jury were not obliged to believe appellant's guilt or innocence depended entirely upon the presence or absence of design on her part such as would confine their inquiry to the higher degrees. We think reasonable minds might differ on this question, and therefore, we cannot decide it as a matter of law.

Error assigned upon instructions we think are without merit and require no discussion; but, because of the error in the admission of the evidence above discussed, we conclude that appellant must be granted a new trial. The judgment

is reversed for further proceedings in accordance with the views herein expressed.

DUNBAR, C. J., FULLERTON, MOUNT, and GOSE, JJ., concur.