[Criminal No. 329. Filed November 18, 1913.]

[136 Pac. 279.]

W. J. CROWELL, Appellant, v. STATE, Respondent.

1. INDICTMENT AND INFORMATION—DUPLICITY.—An indictment charging more than one offense is bad for duplicity.

2. HOMICIDE—EVIDENCE—EVIDENCE OF OTHER CRIMES—ADMISSIBILITY.—In a prosecution for homicide, accused not having himself killed decedent, that being by a third person, evidence that the third person shortly before had assaulted another man at the direction of accused was not admissible, where it did not appear that the killing was in any way connected with the assault in question; evidence of other crimes being admissible only to show motive, intent, absence of mistake, a common scheme, or the identity of the person charged with the crime.

[As to evidence of other crimes in criminal prosecutions, see note in 105 Am. St. Rep. 976.]

3. CRIMINAL LAW—EVIDENCE — DECLARATIONS OF CO-CONSPIRATORS.—While the declarations of one co-conspirator are admissible in evidence against another, when made in furtherance of the conspiracy, yet declarations made after the object of the conspiracy is accomplished are not admissible, especially in view of the fact that Penal Code of 1901, section 925, allows persons charged as principals in the same crime to have separate trials.

[As to declarations of co-conspirators, see note in 3 Am. St. Rep. 474.]

4. CRIMINAL LAW—EVIDENCE—ACTS OF CO-CONSPIRATOR.—The acts of one co-conspirator, performed after the object of the conspiracy has been effected, are inadmissible against another.

5. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.—In a prosecution for homicide, where it was claimed that accused had another kill deceased, evidence that accused's wife warned the wife of deceased to look out for her husband, and that there was going to be trouble, is inadmissible, being the conclusion of accused's wife, and not a statement of the facts on which the witness based her conclusion.

6. HOMICIDE—EVIDENCE—ADMISSIBILITY—DECLARATIONS.—In a prosecution for homicide, evidence of a warning given by accused's wife to the wife of deceased is inadmissible; the statement being made in the absence and out of the hearing of accused.

7. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT.—In a prosecution for homicide, where the state asked accused's wife if she did not warn the wife of deceased to look out for her husband, and that there was going to be trouble, the matter being a collateral one and not properly admissible, the state is bound by the witness' answer and cannot impeach it.

8. CRIMINAL LAW—PRESUMPTIONS.—The presumption of innocence extends to all persons accused of crime, and is not withdrawn during the trial, however strong the evidence against him may be.

APPEAL from a judgment of the Superior Court of the County of Pinal. J. E. O'Connor, Judge. Reversed and remanded.

The facts are stated in the opinion.

Messrs. Baker & Baker and Mr. Benton Dick, for Appellant.

Mr. G. P. Bullard, Attorney General, Mr. Leslie C. Hardy, Assistant Attorney General, and Messrs. Hayes & Laney, for Respondent.

ROSS, J.—The appellant and one Frank Nort were jointly indicted for the murder of William Dobson. Upon a separate trial appellant was convicted of second degree murder. From the judgment of conviction and order overruling his motion for a new trial he appeals.

Dobson came to his death from a gunshot wound inflicted by Nort. Appellant at the time the fatal shot was fired was

not present, but was in his place of business some seventy-five or eighty feet away.

While the appellant and Nort were jointly indicted as principals, the case was tried by the prosecution on the theory that Nort inflicted the fatal wound upon the solicitation, command, and under the influence of the appellant. Our statutes have abrogated the distinction of principal and accessories before the fact in felony cases, and all persons concerned in the commission of a felony are now prosecuted, tried, and punished as principals (Pen. Code, sec. 845; *Trimble* v. *Territory*, 8 Ariz. 281, 71 Pac. 934), yet Nort may be described as the principal and appellant as accessory, as those words were formerly used, to convey the relation, it is claimed, they sustain to each other. The case was defended upon the theory that appellant was not concerned in the commission of the offense charged.

The appellant's assignments of error all go to the admission of evidence over his objections. These assignments we group as follows and shall consider them in their order:

(1) The court erred in permitting a witness for the prosecution to testify on his chief examination to an assault made by Nort upon one Swearington two or three hours before he shot Dobson.

(2) The court erred in permitting witnesses Gouraud and Sinnott, for the prosecution, to testify in rebuttal that, after the fatal shooting and while appellant was absent, Nort told them that appellant "pinned the badge on him, handed him the gun, and told him to go ahead." Assignments 4 and 5.

(3) The court erred in permitting witnesses to testify to statements and declarations of Nort after the shooting, in the absence of appellant, concerning his conduct in connection with the killing. Assignments 2, 3, 6, and 7.

(4) The court erred in permitting witnesses to testify to the actions and conduct of Nort after the shooting while on appellant's premises. Assignments 8, 9, 10, 11, and 12.

(5) The court erred in permitting defendant's witness, Mrs. Crowell, to be cross-examined, over objection, as to what she said to Mrs. Dobson about looking after her husband; that there was going to be trouble—and in permitting the prosecution to rebut Mrs. Crowell's testimony on this point. Assignments 13 and 14.

The first evidence offered by the prosecution was that, some two or three hours before Nort shot Dobson, one Swearington entered appellant's place of business and asked to purchase some hay from appellant. After parleying for a moment with appellant, the witness says: ''Bert Swearington asked Mr. Crowell if he kept a fighting man around there, and Crowell says 'You bet your life I do,' and took this fellow Bert and pushed him away from the bar, . . . and he says to Frank Nort: 'Frank, go get on him; put him down'—and Frank Nort immediately turned around to Bert Swearington and punched him and knocked him down.'' This evidence was objected to as being incompetent and irrelevant, and as tending to prove a different issue from that presented in the indictment.

Under our system of criminal procedure an indictment charging more than one offense is bad for duplicity. The pleader is required to reduce the issue as to the guilt of accused to one offense and one only. It logically follows that the evidence should be confined to that issue. Indeed, the ''general rule is that evidence of offenses other than that for which the defendant is on trial cannot be introduced. *Kinchelow* v. *State*, 5 Hump. (Tenn.) 10. But there are well-established exceptions. *Peek* v. *State*, 2 Hump. (Tenn.) 78; *Defrese* v. *State*, 3 Heisk. (Tenn.) 53, 8 Am. Rep. 1; *Williams* v. *State*, 8 Hump. (Tenn.) 585; *Britt* v. *State*, 9 Hump. (Tenn.) 31; *Cole* v. *State*, 6 Baxt. (Tenn.) 239; *Dobson* v. *State*, 5 Lea (Tenn.), 273; *Mynatt* v. *State*, 8 Lea (Tenn.), 47; *Murphy* v. *State*, 9 Lea (Tenn.), 377; *Links* v. *State*, 13 Lea (Tenn.), 710, 711; *Foute* v. *State*, 15 Lea (Tenn.), 712; *Rafferty* v. *State*, 91 Tenn. 655, 664, 16 S. W. 728. The principle is that no evidence is competent which is not of a character to throw light on the issue, and it is usually true that proof of other crimes committed will not reflect any light upon the special crime with which the defendant stands charged.'' *Sykes* v. *State*, 112 Tenn. 572, 105 Am. St. Rep. 972, 82 S. W. 185.

As exceptions to the general rule, evidence of other crimes, it is said, is competent to prove the specific crime charged when it tends to establish: (1) Motive, e. g., the commission of one crime to suppress evidence of another crime. *State* v. *Kent*, 5 N. D. 516, 35 L. R. A. 518, 67 N. W. 1052. (2)

Intent, e. g., in embezzlement cases. *Lang* v. *State,* 97 Ala. 41, 12 South. 183. Forgery. *People* v. *Bird,* 124 Cal. 32, 56 Pac. 639. (3) The absence of mistake or accident, e. g., passing counterfeit coin or bill. *Commonwealth* v. *Jackson,* 132 Mass. 16. Receiving stolen property. *Commonwealth* v. *Johnson,* 133 Pa. 293, 19 Atl. 402. (4) A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, e. g., a general agreement to rob, and to shoot if resisted; other robberies committed in the general plan or scheme may be shown on a trial for murder committed in an attempt to rob. *State* v. *Lee,* 91 Iowa, 499, 60 N. W. 119. On a trial for murder as a result of a conspiracy, other crimes prior to the murder, if committed in carrying out the unlawful scheme, may be shown. *State* v. *McCahill,* 72 Iowa, 111, 33 N. W. 599, 30 N. W. 553. (5) The identity of the person charged with the commission of the crime on trial, e. g., that the defendant charged with murder used stolen tools to enter house and shot the victim with a pistol stolen from another house. *People* v. *Rogers,* 71 Cal. 565, 12 Pac. 679. See note to *Sykes* v. *State,* 105 Am. St. Rep. 976, for a full and comprehensive discussion of the questions.

Now, the trouble with Swearington does not tend to show or afford any cause or motive on the part of appellant to kill Dobson, nor intent or mistake, for it was not he who fired the fatal shot, nor could it be for identification, as that was unquestioned. It is suggested by the prosecution that it was a part of a "common scheme or plan." The argument is that the evidence, showing as it does that Nort in committing the assault on Swearington by direction of appellant, would have a tendency to show that Nort was the tool or instrument of appellant, and, upon the hypothesis that Nort obeyed appellant in the one instance, he was acting under appellant's influence when he sought Dobson and shot him. In other words, the appellant, having been identified as participating with Nort in an assault upon Swearington, was likewise *particeps criminis* to the shooting of Dobson. However ingenious this argument may seem, we think it fails to show or tends to show a common scheme, plan, or system contemplating or embracing the commission of the two offenses of (1) assault on Swearington and (2) the killing of Dobson. If

Dobson had taken up Swearington's trouble and made it his, and the two offenses had been thus linked together, it might be the evidence would be admissible. But Dobson was in no way concerned in that trouble as a partisan or otherwise. The shooting of Dobson later in the day is not shown to be related to or connected with the Swearington trouble. The only effect of such evidence was to impress the minds of the jury that Nort was a quarrelsome, vicious person, and, being an employee of appellant, the latter was measurably responsible for his conduct, whatever it might be. The rule of agency in civil actions, involving property rights only, has its limitations. Surely the rule should be more strictly bounded when the life or liberty of the citizen is at stake.

In *Farris* v. *People,* 129 Ill. 521, 16 Am. St. Rep. 283, 4 L. R. A. 582, 21 N. E. 821, it is said: ''The general rule that evidence of a distinct, substantive offense cannot be admitted in support of another offense is laid down by all the authorities. It is, in fact, but the reiteration of the still more general rule that in all cases, civil or criminal, the evidence must be confined to the point in issue, it being said, however, by authors on the criminal law, that in criminal cases the necessity is even stronger than in civil cases of strictly enforcing the rule; for where a prisoner is charged with an offense, it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment and matters relating thereto, which alone he can be expected to come prepared to answer. 3 Russell on Crimes, 5th ed., 368; 1 Roscoe on Criminal Evidence, 8th ed., 92. 'No fact which, on principles of sound logic, does not sustain or impeach a pertinent hypothesis is relevant, and no such fact, therefore, unless otherwise provided by some positive prescription of law, should be admitted as evidence on a trial. The reason of this rule is obvious. To admit evidence of such collateral facts would be to oppress the party implicated, by trying him on a case for preparing which he has had no notice, and sometimes by prejudicing the jury against him. . . . To sustain the introduction of such facts, they must be in some way capable, as will presently be seen more fully, of being brought into a common system with that under trial.' Wharton on Criminal Evidence, sec. 29.'' · *People* v. *Doty,* 175 N. Y. 164, 67 N. E.

303; *Shaffner* v. *Commonwealth,* 72 Pa. 65, 13 Am. Rep. 649; *Towne* v. *People,* 89 Ill. App. 258. In the latter case it was said: ". . . Yet they are all in substantial accord upon the proposition that unless there be some apparent logical connection between the two offenses, either by reason of both being of the *res gestae,* or both being part of one system, or the one tending to show a scienter in the other, the general rule governs, and the exception to it does not apply." We think the trouble with Swearington was unrelated to offense laid in the indictment, and that the court erred in admitting evidence of it.

The errors complained of in points 2 and 3 are of the same general nature, and will be treated of together. These assignments all pertain to statements and declarations made by the codefendant, Nort, in the absence of appellant, after the shooting of Dobson by Nort. Some of the statements made by Nort and admitted were: "He told me that he went over to Dobson's place to get a 'swatter' and met Dobson, and that Dobson reached over to pull off the badge, and that he shot Dobson, firing the first shot." "Nort said if we [the officers] would take off the handcuffs and give him a gun, he would do it yet" (meaning he would finish killing Dobson). "I wish I had killed the son-of-a-bitch [Dobson]. If you will take them [handcuffs] off I will finish the job. If I had my 30–30 over at the saloon I would get some of you fellows." In rebuttal: "Q. Mr. Gouraud, you heard statements testified on direct examination, statements made by Nort with regard to this shooting? A. Yes, sir. Q. While on the way from Red Rock to Florence? A. Yes, sir. Q. Did you hear any statements made by Nort or confessions by Nort on the way over as to where he got the star and revolver? A. Yes, sir; I did. Q. What did he say? A. Why, he made the remark that Mr. Crowell pinned the badge on him, and he said at the time he didn't want it, and threw it off, but Mr. Crowell repinned the badge upon his breast. Q. Did he make any statement as to the gun? A. He admitted that he received the gun from Mr. Crowell." Concerning the same conversation by Nort, Sinnott, a deputy sheriff, testified: "I asked him [Nort] how he got the badge and the gun, and he said that Crowell pinned the badge on him, and that he knocked it off once, and said he didn't want it, and Crowell

pinned it on the second time, and also handed him the gun and told him to go ahead.'' It is the contention of the prosecution that, in the separate trial of appellant, all these statements and declarations of Nort were competent evidence against Crowell upon the theory of a conspiracy between appellant and Nort to murder Dobson. Granting that a conspiracy existed between them to take Dobson's life, and that it had been established by satisfactory evidence, still, since these admissions and declarations by Nort were made after the shooting of Dobson, in the absence of appellant, they were not competent evidence against the appellant.

''The principle on which the acts and declarations of one conspirator are admitted in evidence against the other conspirators is that, by the act of conspiring or confederating together, the conspirators have jointly assumed to themselves as a body the attribute of individuality so far as constitutes the prosecution of the common design, thus rendering whatever is said or done by anyone in furtherance of that design a part of the *res gestae* and the act of all. And it is settled that when a conspiracy is once established, until the object is attained every act and declaration of one conspirator in pursuance of the original concerted plan, and in furtherance of the common object, even in the absence of the others, is in contemplation of law the act and declaration of all, and is therefore original evidence against each.'' *Roberts* v. *Kendall*, 3 Ind. App. 339, 29 N. E. 487; 2 Wharton on Criminal Evidence, 10th ed., sec. 698.

The reason for the rule of evidence here enunciated ceases to exist after the consummation of the object of the conspiracy. That being accomplished, the confederating body is dissolved or ceases to have existence. Its purpose having been achieved, any statements or declarations of one of the members of past events or occurrences are admissible only against such member. *State* v. *Nist*, 66 Wash. 55, 60, Ann. Cas. 1913C, 409, 118 Pac. 920; *State* v. *Beebe*, 66 Wash. 463, 120 Pac. 122.

In *People* v. *Ayhens*, 16 Cal. App. 618, 117 Pac. 789, the police officer who made the arrest of a co-conspirator testified as to his declarations and the court said: ''The fact that Miller was either a co-conspirator or an admitted accomplice does not take his declarations, made when the crime or alleged

conspiracy was a thing of the past, out of the category of hearsay evidence, nor entitle them to any greater consideration than that accorded to the statements of an innocent and disinterested third person.''

In *State* v. *English*, 14 Mont. 399, 36 Pac. 815, the trial court had permitted the prosecution to prove the statements of an accomplice, made after the crime charged had been committed, and the court said: ''It is clear from the testimony that these confessions were not made in the presence of defendant, nor were they made during the pendency of the commission of the larceny, nor in its furtherance, nor were they part of the *res gestae*. They were simply narrations by De Witt, after the larceny was completed, of the events which were past and accomplished. Under such circumstances the confessions of an accomplice, or of one of two persons charged with a crime, can be used as against the confessing person only. In the case at bar they were used as against the other person only. This was error. This is elementary, and ancient and modern law; and it is just.''

Andrews, J., in *People* v. *McQuade*, 110 N. Y. 284, at page 307, 18 N. E. 156, at page 166 (1 L. R. A. 273), reading, said: ''. . . Only the acts and declarations of a co-conspirator, done in furtherance and execution of the common design, are admissible against one of the conspirators on trial for the common offense, and that, when the conspiracy is at an end, and the purposes of the conspiracy have been fully accomplished, or the conspiracy has been abandoned, no subsequent act or declaration of one of the conspirators is admissible against another.''

In *State* v. *Bogue*, 52 Kan. 79, 85, 34 Pac. 410, 411, the court said: ''The admission of the declarations of Dr. Kidd before the coroner's jury, in the absence of the defendant, was error. Whatever might be said in favor of the admissibility of such testimony under the common-law practice, where one is indicted as principal and another as accessory, in this state, where accessories before the fact are charged and tried as principals, and where defendants are permitted to testify in their own behalf, we think the reason, if any there might be, for the admission of such testimony fails. We, of course, are not here considering declarations of coconspirators, or of persons engaged in a common criminal

enterprise before or during the perpetration of their crime, but declarations of one of two defendants, jointly charged as principals, made long after the offense, if any was consummated. We are clearly of the opinion that the testimony was inadmissible. 1 Wharton on Criminal Law, 8th ed., sec. 237; *Ogden* v. *State,* 12 Wis. 532, 78 Am. Dec. 754.'' *People* v. *Oldham,* 111 Cal. 648, 44 Pac. 312; 12 Cyc. 439; Wharton on Criminal Evidence, 10th ed., 699, 700.

The respondent cites the case of *State* v. *Mann,* 39 Wash. 144, 81 Pac. 561, apparently holding a contrary view, but an examination of that case discloses that the court followed the common-law rule, with its distinctions of principal and accessory before the fact, and the cases cited in support of that view are from states in which the distinction has not been abrogated.

In *State* v. *Nist,* 66 Wash. 55, Ann. Cas. 1913C, 409, 118 Pac. 920, the Mann case was distinguished, and among other things the court said: ''In the case cited [Mann case], the husband was charged as an accessory before the fact, and it was necessary for the state, in order to convict the accessory, to show the guilt of the principal. Hence, on that branch of the case, the state was at liberty to resort to any evidence that would have been admissible had the principal herself been on trial.'' See, also, *State* v. *Beebe,* 66 Wash. 463, 120 Pac. 122. In the Nist and Beebe cases, as in the case at bar, the defendants were jointly indicted with others as principals. In the Nist case the court said: ''Declarations made after the conspiracy has ceased to exist, and which are thus but narratives of past events, are admissible only against those from whom they proceed; they are not receivable as evidence against a fellow conspirator.''

Appellant and Nort were indicted jointly as principals. Under the law appellant was entitled as a matter of right to a separate trial. Pen. Code 1901, sec. 925. If the extrajudicial statements and declarations of his codefendant are to be used as evidence against him, he would be shorn of the benefits of a separate trial.

The court permitted several witnesses to testify that after Nort had shot Dobson he returned to appellant's house, and was seen on the upper porch of his premises, waving his pistol in a threatening manner and pointing at Dobson's place,

walking to and fro the while. The acts of a codefendant or co-conspirator are in the same category as his declarations, and their competency is tested by the same rules of evidence. See authorities cited above.

The conduct of Nort was contemptible and brutal, and, so far as he is concerned, painted him as a remorseless and vicious criminal. We think it would be a dangerous rule of evidence to hold that the appellant was responsible for his sinister demonstrations, or that his conduct reflected the appellant's state of mind, or tended to show complicity in the crime.

The wife of appellant testified for the defense. On her cross-examination the prosecution asked her the question, "Didn't you tell Mrs. Dobson, about twenty minutes before this shooting occurred, to look out for her husband; there was going to be trouble?" The witness answered, "No, sir." A motion was made to strike the answer on the ground that it was incompetent, irrelevant, and immaterial and not proper cross-examination. The prosecution admits that the question was not asked as a part of the cross-examination. The purpose of the question was therefore to lay the foundation for impeachment. The fact sought to be proved by the question, even if true, fails to disclose the parties contemplating trouble. There is no intimation that appellant was concerned in it. Even though the witness made the statement and trouble actually occurred according to her warning, the trouble was between Nort and Dobson. Such evidence would not have been competent in the trial of the case in chief as against appellant, because it was the conclusion of Mrs. Crowell, and not the statement of the facts from which the conclusion was drawn.

Again, the statement was made in the absence and out of the hearing of appellant and therefore was not binding upon him. The subject matter of the question was collateral, and the prosecution was bound by the answer. Wharton on Criminal Evidence, sec. 484; *People* v. *Webb,* 70 Cal. 120, 11 Pac. 509.

However, the prosecution, over objection, was permitted to contradict Mrs. Crowell. This was error. *People* v. *Webb, supra; People* v. *Dye,* 75 Cal. 108, 16 Pac. 537; *Driscoll* v.

*People,* 47 Mich. 413, 11 N..W. 221; *State* v. *Haynes,* 7 N. D. 70, 72 N. W. 923; Wharton on Criminal Evidence, sec. 484.

It is deeply regrettable that prosecuting officers in their zeal to secure convictions so often insist upon the introduction of illegal evidence, and that the courts in the hurry and heat of the trial permit such evidence, when such errors in most cases could be avoided upon reflection and investigation of the authorities.

"We are quite clear that errors have been committed by the admission of evidence in this case, at war with the well-settled law on the subject. That law must protect all who come within its sphere, whether the person who invokes its protection seems to be sorely pressed by the weight of the inculpatory evidence in the case or not. It cannot alter, for the purpose of securing the conviction of one who may be called or regarded as a great criminal, and yet be invoked for the purpose of sheltering an innocent man. In the eye of the law all are innocent until convicted in accordance with the forms of law and by a close adherence to its rules." Opinion of Justice PECKHAM in *People* v. *Sharp,* 107 N. Y. 427, 1 Am. St. Rep. 851, 885, 14 N. E. 319.

The judgment of the trial court is reversed and the case remanded for a new trial.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Concurring.—I concur in the conclusion reached by the majority of the court. The evidence of the prosecution, considered alone, to my mind wholly disconnects the Swearington transaction from the Dobson transaction. Witness Gouraud was permitted to testify, over objections, that Crowell pushed Swearington away from the bar, and said to Frank Nort: "Frank, go get on him; put him down." This command was instantly obeyed. When Swearington was disposed of, and had left Crowell's place, the same witness was permitted to testify, over objection, that following the transaction "Mr. Crowell told Frank Nort that he intended to place him [Nort] in full charge of the bar, and he says: 'I expect you, Frank, to run things the way you see fit, and keep order around here. I have been looking for a man like you for a long time, Frank'—and he says: 'I am

pretty well satisfied.' '' It is contended by the state that the fact that Nort instantly obeyed the command of Crowell, and threw Swearington out, assaulted Swearington, and expelled him from the building is evidence of a common scheme existing between Crowell and Nort; that Nort and Crowell had formed a compact by which Nort had agreed to carry out the wishes of Crowell; and, the Dobson transaction following closely upon the Swearington incident, the two transactions became one in fact, and the Swearington incident became evidence throwing light upon the relation existing between Crowell and Nort, and tended to connect Crowell with the Dobson homicide. The evidence was offered and received for the purpose of showing the relation existing between Crowell and Nort, and any pertinent evidence tending to show an illegal relation between these parties, by which the homicide was accomplished, would be relevant. The Swearington transaction alone would have no such tendency. The statements made by Crowell to Nort, above quoted, immediately following that incident, conclusively show that no prior understanding existed between Crowell and Nort for any purpose in connection with either transaction. Those statements clearly indicate that Nort was on trial as to his qualifications as a fighting man, and in the opinion of Crowell, he had satisfactorily stood the test as such fighting man, and, as Crowell wished to employ such a man about his business place, he was satisfied to employ Nort, and did employ him, giving him instructions as to the duties that he would be required to perform. The Swearington incident became closed, and wholly disconnected from anything which occurred afterward.

The transaction in which Dobson lost his life began at the time Crowell requested Nort to go to Dobson's place for the "swatter" claimed by Crowell, and ended when the conflict between Dobson and Nort closed. All matters and things which transpired within that period of time, in any manner connected with that transaction, were a part of the transaction, and were relevant as evidence comprising the *res gestae* (*Irvine* v. *State,* 104 Tenn. 145), and were admissible as such, all comprising one transaction. The Swearington transaction was closed before the Dobson transaction began, and neither can be considered any part of the other for any

purpose.   Evidence of the Swearington transaction was cal-
culated to prejudice the rights of appellant when on trial
for the killing of Dobson, and we must presume that his
rights were prejudiced by the allowance of such evidence.

The remaining questions are fully considered in the prin-
cipal opinion, in which I fully concur.

NOTE.—The authorities on the admissibility of evidence of other
crimes in criminal case are gathered in an extensive note in 62 L. R. A.
194. ·