[No. 9430. Department One. July 22, 1911.]

# H. T. SEGERSTROM, *Respondent*, v. R. T. LAWRENCE, *Appellant*.[1]

MUNICIPAL CORPORATIONS—STREETS—NEGLIGENT USE—COLLISION WITH AUTOMOBILE—EVIDENCE—SUFFICIENCY. A verdict for injuries sustained by a pedestrian, run down by an automobile, is sustained by the evidence, where it appears that the automobile was driven after nine o'clock, on the left side of the street, without lights, that no warning was given, and that plaintiff exercised due care.

SAME—LAW OF ROAD—INSTRUCTIONS—APPEAL—HARMLESS ERROR. Where an automobile, driven on the left side of a street, struck a pedestrian, it is not prejudicial error to give an inaccurate instruction that the law requires vehicles to remain on the right side of the street and that a driver violating such law is bound to exercise a higher degree of care than if he were on the right side; in view of Rem. & Bal. Code, § 5558, requiring passing vehicles to seasonably turn to the right of the center of the road, and Id., § 5569, requiring automobiles on passing, to turn to the right, and the general "law of the road," arising from usage, requiring persons upon a continuously used street to keep upon the right side.

SAME—ACTIONS—EVIDENCE—ADMISSIBILITY. In an action for personal injuries by a pedestrian struck by an automobile, while not commendable practice, it is not prejudicially erroneous to allow the plaintiff, after stating that he looked for vehicles before starting to cross the street, to give as his reasons for looking that his son had shortly before been injured while crossing; as the jury could not have been misled.

SAME. In an action for personal injuries by a pedestrian struck by an automobile, the arrest of the defendant and a bystander's request that defendant take the plaintiff home, immediately following the accident, is admissible in evidence as part of the general transaction.

WITNESSES—CROSS-EXAMINATION. Where the defendant testified that he had been acquitted in police court of any offense in connection with running down a pedestrian, it is proper, on cross-examination, to require him to state for what offense he was tried.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $300 in favor of a pedestrian, struck by an automobile, is not excessive, where the plaintiff was much bruised, suffered pain, and was ill and unable to attend to business for a considerable time.

[1]Reported in 116 Pac. 876.

Appeal from a judgment of the superior court for Spokane county, Peck, J., entered November 26, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian through a collision with an automobile.　Affirmed.

*Nuzum & Nuzum* and *Geo. H. Armitage*, for appellant.
*Guy B. Groff*, for respondent.

FULLERTON, J.—The respondent, while walking across Main avenue, in the city of Spokane, collided with, or was run into and injured by, the appellant, who was driving an automobile.　He brought this action to recover for the injury sustained.　On a trial by jury a verdict and judgment was returned and entered in his favor, and this appeal followed.

The appellant complains that the evidence was insufficient to justify the verdict, but it is clear there was a case for the jury.　The evidence on the part of the respondent tended to show that the collision occurred sometime after nine o'clock in the evening; that the automobile was being driven without lights, on the left-hand side of the street, reckoning from the direction in which it was going; that no warning was given of its approach by tooting a horn or otherwise; and that it was driven in a somewhat reckless manner.　Evidence was introduced also tending to show due care on the part of the injured person.　These facts made a *prima facie* case for the respondent, and it was for the jury to say whether the case was overcome by the evidence introduced on the part of the respondent.

The court, among other instructions, gave the following to the jury:

"The law of the road is that all vehicles should remain upon the right side of the street in the direction in which they are going, and that all drivers are presumed to know the law of the road, and should be guarded thereby; that a driver of a vehicle or automobile voluntarily violating the law of the road, and driving or riding along the wrong side of the street

is bound to use a higher degree of care than if he were properly operating his automobile on the right side of the street."

This instruction, while not strictly accurate, was not prejudicial. The statute relating to the law of travel for vehicles upon a public highway requires that they shall seasonably turn to the right of the center of the way when passing another vehicle going in the opposite direction (Rem. & Bal. Code, § 5558); and the statute relating to automobiles requires the driver to turn to the right on meeting vehicles, teams or persons moving or headed in the opposite direction. Rem. & Bal. Code, § 5569.

" 'Seasonably turn' means that the travellers shall turn to to the right in such season that neither shall be retarded in his progress, by reason of the other occupying his half of the way which the law has assigned to his use, when he may have occasion to use it in passing. In short, each has the undoubted right to one-half of the way, whenever he wishes to pass on it; and it is the duty of each, without delay, to yield such half to the other." *Brooks v. Hart*, 14 N. H. 310.

There is a "law of the road" also, arising from usage and custom, which requires persons traveling upon a continuously used street or highway to keep upon the right side of such way. These are regulations to avoid collisions, and the one who neglects it and collides with another usually has the burden of explaining his conduct. But these rules are not inflexible. A person may lawfully use what is to him the left-hand side of the road if there is no travel at that time upon that part of the way, or if the travel is not so heavy as to make his conduct a source of danger. But a person upon the wrong side of the way must always exercise a care commensurate with his position. This is usually a higher degree of care than that required of him while on the correct side of the way. The instruction complained of, therefore, while correct as a general proposition, was not accurate under all circumstances. It was, however, relevant enough to the case in hand; that is to say, the case does not present a state of

facts rendering a more detailed statement of the general rule announced necessary, hence we can find no prejudice in the instruction given.

It is complained that the court erroneously permitted the respondent on direct examination to give his reason for being certain that he stopped and looked for vehicles passing along the street before attempting to cross the same just prior to the time he was injured. This, while a proper subject for cross-examination, had better have been omitted on the direct. The statement that he did stop and look for passing vehicles contained all of the facts material to be shown, and it is usually best to confine the witness on direct examination to the naked facts. Nevertheless, we cannot think the error prejudicial. The reason given was that an accident had befallen his son while crossing the street a short time before, and that this was in his mind when he approached the street for that purpose. The relation of this fact could have in no manner misled the jury. Such being the case, the burden of a new trial should not be required.

The arrest of the appellant, and the request of a bystander that the appellant take the respondent home in his automobile, occurred immediately following the accident and were properly shown as part of the general transaction. Moreover, testimony to the latter fact was offered for the purpose of contradicting the respondent. It was admissible also for that purpose.

On his direct examination the appellant testified, in response to interrogatories propounded by his counsel, that he was acquitted by the police justice of any crime in connection with the accident to the respondent. On cross-examination the respondent was permitted to ask him, over the objection of the appellant, what the offense was for which he was tried. This is assigned as error, but clearly it was proper cross-examination. The purpose of the appellant was to show that he had once been acquitted of fault in the matter at issue,

and it was clearly pertinent to show what matters then before the jury were litigated in the police court.

Finally, it is claimed that the verdict is excessive. The amount of the verdict was $300. The respondent testified that while he had suffered no permanent injuries, he was much bruised, and suffered pain and was ill for a considerable period after the hurt, and that during such time he was incapacitated to a large extent from carrying on his ordinary business. The verdict does not seem to us so far unreasonable as to warrant interference.

The judgment is affirmed.

DUNBAR, C. J., GOSE, PARKER, and MOUNT, JJ., concur.