[No. 9805. Department One. November 25, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. AXEL NIST, *Appellant*.[1]

CRIMINAL LAW—EVIDENCE—DYING DECLARATIONS—DECLARATION OF CO-CONSPIRATORS. Upon a prosecution for the murder of a policeman, shot while attempting to arrest the accused and his companion or co-conspirator, who was also killed in the melee, the dying declaration of the co-conspirator is not admissible in evidence, where the declaration was a mere narrative of past events; since it was not made during the existence or in furtherance of the conspiracy, and was hearsay.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE—CURING ERROR—OTHER EVIDENCE. The erroneous admission of evidence which might have affected the verdict will not be held harmless because the conviction was sustained by other evidence, unless it is clearly shown that it was nonprejudicial.

Appeal from a judgment of the superior court for King county, Gay, J., entered May 6, 1911, upon a trial and conviction of murder in the second degree. Reversed.

[1]Reported in 118 Pac. 920.

*Ivan Blair*, for appellant.

*John F. Murphy, Alfred H. Lundin,* and *H. B. Butler*, for respondent.

FULLERTON, J.—The appellant, Axel Nist, and one John Ford were jointly charged with murder in the first degree, by an information reading as follows:

"I, John F. Murphy, prosecuting attorney in and for the county of King, state of Washington, come now here in the name of and by the authority of the state of Washington, and by this information do accuse Axel Nist and John Ford, alias Ryan, alias Loffey, and each of them, of the crime of murder in the first degree, committed as follows, to wit:

"They, said Axel Nist and John Ford, alias Ryan, alias Loffey, and each of them, in the county of King, state of Washington, on the 23d day of February, 1911, did wilfully, unlawfully, feloniously, and with a premeditated design to effect the death of one Judson P. Davis, shoot at, towards and into the body of said Judson P. Davis, with certain deadly weapons, to wit, revolver-pistols, then and there loaded with powder and bullet, and then and there held by them, the said Axel Nist and John Ford, alias Ryan, alias Loffey, and each of them, thereby mortally wounding said Judson P. Davis, of which said mortal wound said Judson P. Davis then and there died.

"Contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington."

The information was filed on March 21, 1911. At that time Ford was dead, he having died some two days subsequent to the shooting mentioned in the information. Nist was subsequently tried for the offense charged against him, and convicted of murder in the second degree. He appeals from the judgment and sentence pronounced upon him.

On the trial the state introduced evidence tending to show that Judson P. Davis, at the time he was killed, was a police officer of the city of Seattle; that he, together with another officer, one Hugh C. Smith, was doing patrol duty in an outlying district in the city of Seattle; that they were dressed

in civilian clothing, and wore no visible badges by which they could be distinguished from the ordinary citizen; that in the early part of the evening of February 23, 1911, they ran across the appellant and Ford, and, becoming suspicious because of their appearance and actions, followed them for some distance, finally approaching them; that the appellant and Ford thereupon left the sidewalk and turned into the street, whereupon the officers called upon them to halt; that instead of obeying the command, Nist and Ford turned quickly with drawn revolvers and told the officers to throw up their hands, and at once began firing at them; that the officers returned the fire, and in the melee which followed, Davis was killed outright, Ford was mortally wounded and died therefrom two days later, and Nist was wounded in the hip. The state thereupon called one J. E. Boyden, who testified to the effect that, on the day following the shooting, he visited Ford at the hospital in the city jail, for the purpose of procuring Ford's version of the shooting as a story for the newspaper for which he was then acting as a reporter, and that Ford gave him an account of the affair, as well as an account of his acquaintance with the appellant and of their doings for some days prior to their affray with the police officers; testifying further that Ford, at that time, was in the immediate danger of death and fully realized his condition. He was thereupon permitted to state, over the objection of the appellant, what Ford had said to him; stating, among other things, that Ford said that the appellant and he began the shooting, firing upon the officers before the officers began firing at them; and that they had been engaged in a certain case of highway robbery that had taken place in the city of Seattle some few days prior to the shooting

At the conclusion of the evidence, the court instructed the jury in part as follows:

"Respecting the alleged confession or statements made by the said John Ford after the shooting, and while in the

hospital, to newspaper men and the police officer, you are instructed that such statements in and of themselves do not prove a conspiracy. You must believe from other evidence in the case, either direct or circumstantial, or both, that a conspiracy had been formed before you could find a conspiracy established by the statements of the said John Ford after the shooting, and at most the statements, if any, of John Ford, would be corroborative thereof."

Later on he recalled the jury, and after repeating the foregoing instruction, modified it in the following manner:

"On reflection, I withdraw this instruction from your consideration, and instruct you now to not consider the same as the law in this respect. Instead of that instruction, I declare the law to be as follows: Respecting the alleged confessions or statements made by the said John Ford after the shooting, and while in the hospital, to newspaper men and police officers, you are instructed, that such statements in and of themselves, standing alone, do not prove a conspiracy, and that unless you find from other evidence, direct or circumstantial, in the case, corroborative of such statements that a conspiracy to commit crime existed between the defendant and the said John Ford, you are to disregard such statements. But if you do find from the evidence that the statements of the said John Ford did relate to the defendant, and that the same showed, or tends to show, a concerted design to commit crime on the night in question, and while out for that purpose—that this shooting occurred wherein Davis lost his life—that said Ford or the defendant were the aggressors, and that the same is corroborated by other direct or circumstantial evidence in the case, then his statements are evidence that you may consider with other evidence in the case."

The appellant assigns error upon the admission in evidence of the testimony of the witness Boyden as to the statements made to him by Ford, and the giving of the instructions above quoted.

The ground upon which the court admitted testimony as to the statements of Ford does not appear very clearly in the record. From the preliminary proofs it would seem that it was thought to be admissible as a dying declaration. But

it is manifest that the evidence was not admissible on this ground. Dying declarations are but a species of secondary or hearsay evidence, and their admission is an exception to the rule that excludes hearsay evidence. The exception is founded on the necessities of the case. It oftens happens that there is no third person present to be an eyewitness to an act which results in the death, and if the dying statements of the victim were rejected, there would often be no legal evidence of the facts constituting the crime, and the murderer would go unpunished. But since the rule is founded on the necessities of the case, it is not allowed to extend beyond such necessities; and, hence, a dying declaration, to be admissible as evidence, must be one made by a declarant whose death is the subject of the inquiry. Dying declarations of third persons who were mere participants in, or witnesses to, a transaction causing the death of another are not admissible as evidence on the trial of a person for causing the death of that other. *Snow v. State*, 58 Ala. 372; *West v. State*, 76 Ala. 98; *Daily v. New York & New Haven R. R. Co.*, 32 Conn. 356, 87 Am. Dec. 176; *State v. Pearce*, 56 Minn. 226, 57 N. W. 652, 1065; *People v. Hall*, 94 Cal. 595, 30 Pac. 7; *Mora v. People*, 19 Colo. 255, 35 Pac. 179; 1 Phillipps, Evidence, 287; 1 Greenleaf, Evidence, 156.

It has been held, also, that where two persons were killed by the same act, the dying declaration of one of the victims cannot be received in evidence on the trial of a person indicted for the murder of the other. *State v. Westfall*, 49 Iowa 328; *State v. Bohan*, 15 Kan. 407. In the case before us, the subject of the inquiry was not the death of Ford, and his dying declarations, merely as such, are not proper evidence on the trial of the appellant for the murder of Davis.

The instructions of the court above quoted would seem to indicate that it admitted the statements on the theory that the appellant and Ford conspired together to commit crime, and that the declarations of one co-conspirator are admissible to prove the guilt of the others. But this rule is inapplica-

ble to the case in hand.  The acts and declarations of one co-
conspirator are admissible on the trial of the other, when the
act is shown to have occurred, or the declaration is shown to
have been made, during the existence of the conspiracy and in
the furtherance of it.  Declarations made after the con-
spiracy has ceased to exist, and which are thus but narra-
tives of past events, are admissible only against those from
whom they proceed; they are not receivable as evidence
against a fellow conspirator.  *State v. Mann*, 39 Wash. 144,
81 Pac. 561; *People v. Oldham*, 111 Cal. 648, 44 Pac. 312;
*People v. McQuade*, 110 N. Y. 284, 18 N. E. 156.

It is plain that what Ford told the witness Boyden was in
no sense something said or done in pursuance of a conspiracy.
It was but a narrative of past events, and is clearly without
the rule that renders the declaration of a co-conspirator ad-
missible as evidence.

In the briefs it is suggested that the statements were ad-
missible under the doctrine of the case of *State v. Mann*,
*supra*.  In that case, one Nettie Mann and her husband,
John Mann, were jointly informed against for the crime of
arson; Nettie Mann being charged with having committed
the offense, and her husband with having aided, counseled,
and abetted her therein.  The accused were tried separately,
and on the trial of the husband, subsequent statements and
confessions of the wife were admitted in evidence.  It is
thought that the rule that admitted the statements of the
defendant not on trial in that case, would admit them in the
case at bar.  But the circumstances are not the same.  In
the case cited, the husband was charged as an accessory be-
fore the fact, and it was necessary for the state, in order to
convict the accessory, to show the guilt of the principal.
Hence, on that branch of the case, the state was at liberty to
resort to any evidence that would have been admissible had
the principal herself been on trial.  It follows, as of course,
that the confessions of the principal of having committed
the offense were admissible to prove that branch of the case.

But in the case at bar, both the appellant and Ford were principals in the transaction. They were charged as such, and the guilt of the one in nowise depended upon the guilt of the other. It was not necessary to prove the guilt of Ford in order to convict the appellant. Ford's declarations were, therefore, but hearsay evidence on the trial of the appellant, and cannot be justified on the ground here suggested.

The state's learned counsel, however, contend that there was an abundance of evidence to sustain the conviction outside of the objectionable evidence, and argue that its admission is, for that reason, not so far prejudicial as to require a reversal. But this court has no means of knowing what effect the erroneous evidence had upon the minds of the jury. It may have been the controlling factor that induced the verdict of guilty. Before the erroneous introduction of evidence can be regarded as nonprejudicial, it must clearly appear that it is so. It does not so appear in this instance. The appellant "was deprived of a right which the law accorded him, objected to the deprivation and duly excepted, and the presumption is that he was injured thereby." *State v. Lee Doon*, 7 Wash. 308, 34 Pac. 1103.

The instructions excepted to require no especial consideration. Being founded upon evidence erroneously admitted, they are in themselves erroneous.

The judgment of conviction is reversed, and a new trial awarded.

DUNBAR, C. J., PARKER, MOUNT, and GOSE, JJ., concur.