[No. 19455. *En Banc.* June 25, 1926.]

GEORGE C. THOMPSON, *Respondent,* v. INA W. COLLINS *et al., Appellants.*[1]

[1] NEGLIGENCE (23)—IMPUTED NEGLIGENCE—DRIVER OF AUTOMOBILE. The negligence of a driver of a car is not to be imputed to invitees whom he had picked up and was taking home, on the theory that they were engaged in a common enterprise of pleasure, simply because someone suggested that they stop at the home of one of the guests to see some pictures.

[2] TRIAL (43)—CONDUCT OF COUNSEL—SHOWING INDEMNITY INSURANCE. In a damage case, incidental testimony as to indemnity, elicited upon cross examination and not wilfully injected into the case, is not ground for reversal.

[3] MUNICIPAL CORPORATIONS (384, 389)—COLLISION ON CITY STREET—ACTION FOR DAMAGES—LAST CLEAR CHANCE—EVIDENCE—SUFFICIENCY. In an action for damages in a head-on collision of automobiles, the court is justified in giving an instruction upon the defendant's last clear chance to avoid the accident, where it appears that he saw plaintiff's car on the wrong side of the pavement "in a pocket" and unable to get back on its side of the road, for some considerable distance away, and in ample time to allow the defendant to turn off the pavement upon the travelled road and avoid the accident.

Appeal from a judgment of the superior court for King county, Douglas, J., entered June 29, 1925, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries. Affirmed.

[1]Reported in 247 Pac. 458.

*Poe, Falknor, Falknor & Emory,* for appellants.

*Stanley J. Padden* and *George F. Ward,* for respondent.

HOLCOMB, J.—Respondent, an invitee in a car owned and driven by one Cysewski, was injured by a collison with a car, owned by Ina W. Collins and driven by Frederick B. Collins, on a street in Seattle on the evening of June 30, 1924, while it was still daylight. The cars collided at a place where there is an extraordinarily wide triangular street intersection at the junction of Fairview avenue, running north and south, and Valley street, running east and west. The car in which respondent was riding, a Ford, was traveling easterly on Valley street approaching the intersection, while the Collins car, a Buick sedan, was coming down a hill on Valley street, approaching the same intersection at approximately the same time. Both streets were paved and were dry, and there was a wide space to the north and west of the intersection of Valley and Fairview streets, which was level and flush with the pavement, but was used generally for parking purposes and not commonly for traffic. White lines had been painted on the pavements of both streets in the middle, in order to separate the right-hand and left-hand traffic when approaching the intersection and crossing the intersection of the streets.

There was evidence on behalf of respondent to the effect that the Collins car ran down the hill on Valley street and towards the intersection at a rate approximating thirty miles per hour, and, instead of keeping within the traffic lines of Valley street at the point of the triangle, cut across the triangle diagonally, so as to pass across it at about the center of the triangle, and heading directly across the path of the car in which respondent was riding. The evidence of re-

spondent is that Cysewski's car, when approaching the triangular intersection from the west, was going at about fifteen miles per hour, and perceiving that the Collins car was going across its path and to all appearances to pass to the east or south of the Ford and around behind it, the driver of the Ford turned slightly to his left, so as to bring that car about astradle of the white line. . Just as he did so, the driver of appellant's car turned directly in front of the Ford, which, in attempting to avoid a collision, turned back toward the right of the white line. At the same instant the driver of appellant's car also turned to the east, or to his left, and the two cars came together in a head-on collision. There is also evidence to the effect that appellant's car, immediately before striking the Ford car, skidded a distance of about eighteen feet, leaving a heavy skid mark on the dry pavement, marking the course of appellant's car diagonally across the triangle to about the center thereof before the collision.

Respondent charged negligence on the part of the driver of appellant's car in operating the car at an unlawful rate of speed in excess of that fixed by ordinance, namely, in excess of twelve miles an hour; failure to keep to the right, and cutting corners in violation of the ordinance; defective brakes; failure to keep his car under control; operating his car in a reckless manner so as to endanger the lives and limbs of other persons, and in not using reasonable care to avoid a collision with the car in which respondent was riding, when he could have done so by such care.

In order to controvert the theory of negligence on his part, the driver of appellant's car testified that he saw the Ford car, when it was about ninety or more feet away, emerging from a line of cars and running on the wrong side of the paved portion of the street

as to respondent, and dodging in and out in a zigzag way, described by the witness as "shimmying" up the street as if out of control, on the west side instead of the east side, or his proper side of the street. He noticed that, as respondent's car approached him, another car coming in the same direction, as it reached the side of the Ford proceeded alongside of it in such a way as to put the Ford car "in a pocket," and so as to prevent it from turning back to its own side of the street out of the path of appellant's car. He also testified that he was going about fifteen miles an hour, and could have stopped his Buick sedan in its tracks, or in fifteen feet, and that he did stop it in eighteen feet when he saw that the accident was unavoidable.

Upon this development of the evidence, respondent showed that the ground to the right of appellant's car, at the place in question, was composed of a wide, open, hard, dirt space which, though used mostly for parking purposes, was also used for traffic, and onto which appellant, by merely turning his wheel, could have passed and driven over with ease and safety, and by so doing could have avoided collision with the Ford. It was then presented to the trial court as a situation calling for the application of the doctrine of last clear chance, since appellant, seeing the perilous position of respondent's car, made no effort to stop or turn to the right off the pavement and upon the open, unpaved dirt space.

There was also evidence by disinterested witnesses to the effect that the two cars came together with their front ends on the westerly side of the street, which was the wrong side for the Ford car, and with the left-hand wheels of the Ford slightly out upon the unpaved portion. Appellant's car was upon the extreme right side (as to him) of the pavement.

[1] The evidence also shows that respondent and two other persons were riding in the same car at the invitation of Cysewski, the owner thereof who drove it, after having casually met him at a restaurant down town. There was a wide deviation from the route of the owner and driver to go to his home, to deliver the others to their respective homes, and it was suggested by some one that they stop at the home of one of the guests, incidentally, to see some "war pictures."

Appellant contends that as to respondent, he was not a mere invitee, but was engaged in a joint or common enterprise or adventure, their common desire being companionship of each other, and to be delivered to their respective destinations in a convenient manner.

Upon this proposition of joint or common adventure, appellant cites our cases of *Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320; *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004; *Jensen v. Chicago, Milwaukee & St. Paul R. Co.,* 133 Wash. 208, 233 Pac. 635.

There is no semblance in the situation here, as to the parties riding in the car belonging to and driven by Cysewski, to any of the above cited cases. All of them under the facts were merely invitees. They were engaged in no common enterprise or adventure.

[2] Another error assigned and vigorously argued has reference to the incidental testimony given by an attorney named Hardy, in which he referred to having been approached by a solicitor for an insurance company.

There is no question but that this answer was merely incidental, and was not wilfully injected into the case by either the witness or respondent. It was rather elicited by the nature of the questions propounded on cross-examination on behalf of the appellant. There

was no showing injected into the case of any insurance, anyway, and there was no prejudicial or reversible error in it.

[3]    Our most serious concern has to do with the injection of the last clear chance doctrine into the case upon the evidence introduced on behalf of appellant, and as to the instruction given by the court. Appellant concedes that the instruction is a correct exposition of the law of last clear chance. It is strenuously contended by appellant that there was no evidence justifying the application of the last clear chance theory, and if there was, and it rests upon the evidence of Collins, the driver of appellant's car alone, his evidence must be taken at its face value, wherein he said that, when he saw that the car respondent was riding in was in a position of peril, it was so close to his car that he had no opportunity, that is, *no appreciable time,* in which to turn aside onto the unpaved portion of the street and thus avoid the accident. In other words, that there must be a lapse of appreciable time after the operative discovers that another is in a position of danger in which to avert the accident.

It was also suggested at the oral argument here, that at least respondent had an equal opportunity to exercise the last clear chance to avoid the accident, by turning out on the dirt to the left of his car, as the situation was then presented.

Of course, the last clear chance to avert damage and injury means *that last clear chance* which one has, with sufficient time to act, that another, who has gotten into a perilous situation, does not have, to avoid the injury. There must, of course, be an appreciable length of time in which the actor, upon whom rests the duty of avoiding the damage and injury after the other has placed himself in a situation of danger, may act. If respondent had an *equal chance* to exercise the last clear

chance to avoid the accident, of course neither had the duty of exercising the last clear chance, because the chances were equal.

While we are free to say that it appears to us, that the driver of the car in which respondent was riding must have been guilty of great negligence in driving on the wrong side of the street, and putting himself in a situation where, as a witness stated it, he was "in a pocket" in the traffic, and in zigzagging along the paved portion of the roadway, and it is hard to understand how the jury reached its verdict, yet, it was altogether a question of fact. If the jury, as persons with reasonable minds, could infer, from all the evidence presented, that it was the driver of appellant's car who violated the traffic laws and customs, and which was the proximate cause of the accident and damage, not the driver of the car in which respondent was riding, there is no doubt that they had a right to do so.

Neither is the question of last clear chance to rest solely upon the testimony of the driver of appellant's car, since there was other evidence and physical facts, under which his evidence might have been discredited in whole or in part. For instance, he said he could stop his car in its tracks, or in fifteen feet, and that he did stop it in eighteen feet, when he saw that a collision was unavoidable with the Ford car; and he said that he had no time, in which to turn off the pavement and onto the dirt, when he saw that the collision was inevitable; yet, in other portions of his testimony, he said that he saw the Ford car zigzagging along on the wrong side of the pavement, as if out of control, for some little time after he first noticed it come out of the line of traffic ninety or more feet away. He could have stopped or turned aside when the two cars

were forty or twenty feet apart. While he undoubtedly had the right to assume that the Ford car would go back on its proper side of the paved roadway, if and when it could, and while he undoubtedly had the right to his proper side of the paved roadway, no one has a right to wantonly and wilfully so conduct himself as to cause injury to another. When he saw that the Ford car was not going back to its right side, and that another car had come up and filled the space to its right, he undoubtedly saw that the Ford car was, as he said, "in a pocket," and in such a situation that an accident was likely,—not that it was certain. When it was likely, he having an opportunity to do so, and being the only one having an opportunity to do so, should have so operated his car, if possible, as to avoid the collision which appeared likely. Thus, it was the jury's function to determine whether he could, and should, have done so. It was also the jury's function to determine whether there was appreciable time in which to do so. Hence, it appears to us that none of the cases cited by appellant from this court and others applies to this situation. As was said in *Locke v. Puget Sound International R. & P. Co.*, 100 Wash. 432, 171 Pac. 242, L. R. A. 1918D 1119:

"The duty of the motorman began at the very moment that he saw respondent moving into a situation of peril. . . . The chance to avoid an injury is a relative question, to be resolved solely by reference to the facts of each particular case. If the one party knows of the peril of the other, although brought about by that other's negligence, in time to avoid injuring him, he is at once put to a degree of care commensurate with the present situation of the parties."

We conclude that the judgment must be affirmed.

ASKREN, MAIN, PARKER, and MACKINTOSH, JJ., concur.

FULLERTON, J. (dissenting)—I dissent. In my opinion the facts shown do not present a situation on which to base an instruction on the doctrine of last clear chance.

TOLMAN, C. J., and MITCHELL, J., concur with FULLERTON, J.