[No. 31603.  *En Banc.*  October 15, 1951.]

J. E. REYNOLDS et al., *Respondents,* v. ANTHONY W.
DONOHO, *Appellant.*[1]

[1]Reported in 236 P. (2d) 552.

*Gavin & Robinson,* for appellant.

*Tonkoff & Holst,* for respondents.

FINLEY, J.—This appeal concerns a lawsuit by Edythe Reynolds (hereinafter referred to as respondent) and her ten-year-old daughter, Dacia Reynolds, against Anthony W. Donoho (hereinafter referred to as appellant), to recover damages for injuries allegedly sustained by the former in a collision involving automobiles driven by respondent and appellant. The action was tried before a jury. The result was a verdict of ten thousand dollars for the injuries allegedly suffered by respondent; and one hundred fifty dollars for the injuries allegedly suffered by the daughter, Dacia Reynolds.

On the morning of March 17, 1949, respondent was driving her automobile on a gravel highway toward Bickleton, Washington. Dacia Reynolds, the daughter, was sitting on her right side of the back seat of respondent's automobile. The automobiles driven by respondent and appellant collided approximately seven miles south of Mabton, Washington. The collision occurred as respondent rounded a hairpin curve, which simultaneously curved sharply to her right and ascended a steep hill. Because of the winding nature of the road, both automobiles apparently were proceeding at about twenty miles an hour, or less. Appellant's automobile was traveling around the hairpin curve in a direction opposite to respondent's. Neither driver had a clear view of the roadway throughout the entire length of the curve because of a high embankment on the inner side of the curve. The respondent stated that she first saw the appellant when he was about twenty to thirty feet away. Appellant stated he saw respondent when she was about forty feet away. The evidence varies as to the events which

transpired between the time the drivers first sighted one another and the moment of impact.

Respondent testified that her automobile was as far to her right-hand side of the roadway as possible without scraping the embankment on the inner side of the curve. Appellant claimed that he was on his proper side of the roadway as far as possible; but it appeared that the county, in the process of repairing the road, had scraped gravel from the middle of the road to the side of the roadway, to appellant's right. Appellant was driving somewhat to his left to avoid the ridge of dirt and gravel.

The left front portion of each automobile collided. The appellant testified that he hardly felt the impact. The respondent and Dacia Reynolds testified that the impact was so violent that Dacia was hurled from the back seat, over the front seat, and against the right side of the windshield, with sufficient force to break the glass in the windshield.

Attention will now be given to appellant's first assignment of error and the facts pertinent thereto. The state patrolman who investigated the accident, was called as a witness by the respondent. He testified that he arrived at the scene a short time following the accident; that he observed respondent's automobile was right next to the embankment on her proper side of the road; that appellant was at the scene of the accident, and that his automobile was on the wrong side of the road; and that from the position of the automobiles there was no room for respondent's automobile to pass appellant's without being involved in a collision. The following colloquy then occurred between respondent's counsel and the patrolman:

"Q. Incidentally, at that time did you give Mr. Donoho a ticket?

"A. Yes, sir.

"Q. And what was the disposition of the case?"

Appellant's objection to this question was overruled, whereupon the patrolman continued:

"A. There was a forfeiture.

"Q. What is that?

"A. Forfeiture.

"Q. A forfeiture of the—
"A. Bond or bail."

Appellant's objection was renewed on the ground that such testimony was immaterial, and that its only purpose was to prejudice the jury.

It is important in connection with our subsequent ruling on this matter to point out here that, prior to the above colloquy, the patrolman had testified, and without objection, that appellant stated to him that,

"   .   .   .   he was on the wrong side of the road too far."

Appellant assigns as error the admission of the evidence relative to the "ticket" and the "forfeiture of bail," despite appellant's objection that it was improper, immaterial and prejudicial. Obviously, the problem is whether the evidence relative to the criminal violation, the charge or "ticket," the bail, and the forfeiture, was admissible in the civil action considering that the civil and criminal actions were aspects of the same situation or transaction, and based upon identical operative facts. In other words, the question is whether appellant's conduct concerning the "bail and forfeiture" amounted to an admission which could be used against him in the civil action.

■ The traffic ticket given to appellant is somewhat analogous to an arrest. In *Segerstrom v. Lawrence*, 64 Wash. 245, 248, 116 Pac. 876, we held that in a subsequent civil action, the fact that a defendant has been arrested may properly be shown as part of the general transaction. We are not prepared at this time to overrule that decision.

The briefs on this appeal, and much independent research on our part, lead us to believe that, as to civil actions, the question of the admissibility of evidence pertaining to the forfeiture of bail seems to be without precedent.

It has been held that the fact that a defendant has been convicted of the criminal charge, following a plea of not guilty, cannot be admitted in a subsequent civil action. *Caverno v. Jones*, 61 N. H. 623; *Walther, Adm. v. News Syndicate Co.*, 276 App. Div. 169, 93 N. Y. S. (2d) 537. However, where there has been a plea of guilty in the criminal action,

evidence of such is admissible in a subsequent civil action. *Atkins v. Churchill,* 30 Wn. (2d) 859, 873-4, 194 P. (2d) 364. The reason for the latter holding is stated in *Konshuk v. Hayes,* 150 Wash. 565, 567, 273 Pac. 957, as follows:

"A plea of guilty to a charge of crime is in the nature of an admission. It is an admission of wrong on the part of a defendant so pleading. The jury are therefore entitled to consider it as it considers any other admission; they must view it in connection with the surrounding circumstances, and give it such weight as in their judgment the circumstances warrant. In this instance, the plea was evidence on the general issue, and it would have been error on the part of the court to restrict it as applicable solely to the credibility of the witness."

The plea of *"nolo contendere"* partakes of some of the features of both the plea of guilty and the plea of not guilty in a criminal action. It has been held that the record of a criminal action in which the plea of *"nolo contendere"* was entered is not admissible in a subsequent civil action. *Honaker v. Howe,* 60 Va. (19 Gratt.) 50. The reasoning back of such a holding is that a plea of *"nolo contendere"* is not an unlimited admission of the facts charged in the criminal indictment, leading to a conclusion that it is not to be used as an admission in any action other than the one in which it is entered. *State v. LaRose,* 71 N. H. 435, 52 Atl. 943.

Respondent argues that the evidence pertaining to appellant's "forfeiture of bail" is admissible in the instant case on the theory that such evidence would be admissible in the criminal action, citing *Jones v. State,* 26 Ga. App. 635, 107 S. E. 166; *State v. Cherrington,* 34 S. D. 562, 149 N. W. 421; *Commonwealth v. Myers,* 131 Pa. Super. Ct. 258, 200 Atl. 143. The cited cases do hold that such evidence is admissible in the criminal action; but the reason for its admissibility is on the theory that flight is an admission of guilt in a criminal case. See *State v. Wilson,* 26 Wn. (2d) 468, 482-3, 174 P. (2d) 553. Had the appellant fled from the scene of the automobile accident, there are cases in other jurisdictions holding that evidence of flight may be introduced in a civil suit under the guise of an implied ad-

mission of fault or liability; *Shaddy v. Daley*, 58 Idaho 536, 76 P. (2d) 279; *Greenwood v. Bailey*, 28 Ala. App. 362, 184 So. 285. In *Tomasko v. Raucci*, 113 Conn. 274, 155 Atl. 64, the plaintiff presented evidence, through a police officer, that, although the defendant had not fled from the scene of the accident, he could not be found in his home until the third day following the accident. The Connecticut court said:

"The testimony of the police officer was not relevant to any issue before the court, could only have had the effect of creating an atmosphere prejudicial to the defendant, and should have been excluded."

Like the plea of *nolo contendere (Honaker v. Howe, supra)* or the absence of the accused from his home during the period immediately following the accident *(Tomasko v. Raucci, supra)*, the forfeiture of bail by the appellant was an incident unique in itself. Some analogies may be drawn favoring admissibility. However, the bail forfeiture here involved falls in the category of one of those tubs that must stand on its own bottom. This is particularly true in an automobile accident criminal action. It is common knowledge that, upon the receipt of a traffic ticket, the average motorist pays and then forfeits his bail; the action is thus concluded. It cannot be said that such an act is a general admission of responsibility. Often, it is but a convenient method of concluding the criminal action, convenient both to the person charged and to the administrators of traffic law enforcement.

■■ It is our opinion that the evidence relating to the appellant's "forfeiture of bail" was not admissible. But in this action, we are not prepared to hold that the admission of this evidence was prejudicial. As indicated above, the police officer testified that appellant's automobile was on the wrong side of the road; that from the position of the automobile there was no room for respondent's car to pass appellant's without being involved in a collision; he further testified, and without objection, that the appellant had admitted to him that: ". . . he was on the wrong side

of the road too far." In view of the damning nature of the foregoing testimony, particularly in view of appellant's admission, the testimony respecting the "traffic ticket, bail and forfeiture" appears to have been but cumulative, and therefore, in our opinion, not prejudicial.

Appellant's remaining assignments of error relate to respondent's injuries and the damages awarded to her. It is not contended that the damages awarded to Dacia Reynolds were excessive.

Immediately following the accident, respondent was taken to a doctor who X-rayed her right elbow and her knee. The only treatment then prescribed was rest. The respondent remained in bed for three days following the accident. On the fourth day after the accident, Monday, the respondent resumed teaching school. She completed that school term without missing a day. Throughout the summer of 1949, respondent supervised the work on her small twenty-acre farm and drove a small garden tractor. She resumed teaching in August, 1949, and continued that employment to June of 1950. The physician who first examined respondent did not testify at the trial. Of the many physicians who did testify, none examined the respondent earlier than nine months after the date of the accident. However, prior to the date of the accident, respondent was a very active woman. She supported her invalid husband, taught school, performed her housework, including the upbringing of three children, worked in the garden, both during the school term and during the summer months. Apparently, she was a woman of unusual vitality. Following the date of the accident, respondent could not hang her washing on the clothesline; she was less active about the garden; there was a marked change in her physical appearance; she appeared fatigued. Respondent testified that she could not obtain a teaching contract for 1950-51, because she could not, as previously, play the piano and otherwise play with the school children. There was no evidence that respondent suffered a second accident between the date of the collision and the date of the trial.

The medical testimony concerning respondent's injuries is in conflict. Evidence was introduced that respondent suffered an abrasion on her knee, and three widely separated injuries to her back and spine, which in turn caused nerve irritations and pain in the right arm and the right leg. The injuries to respondent's back and spine consisted in the narrowing of the discs between the vertabrae. The approximate location of each of the the three injuries to respondent's back was, (1) near respondent's shoulders, (2) her middle back, and (3) her lower back. Medical testimony introduced by the appellant was to the effect that these widely separated injuries could not have been sustained in the same accident; and that no one could tell which of the three injuries to respondent's back was caused by the collision of appellant's and respondent's automobiles.

Appellant cites *Hill v. Great Northern Life Ins. Co.*, 186 Wash. 167, 177, 57 P. (2d) 405, wherein this court said:

"Before referring to the particular evidence, we shall advert to the rule to be applied to its consideration. There are, generally, two classes of cases in which expert testimony as to the facts is admissible. In one class, the facts are to be stated by expert witnesses, but the conclusions therefrom are to be drawn by the jury. In the other class, the expert witnesses not only state the facts, but also give their conclusions in the form of opinions, which the jury may either accept or reject. The first class comprises those instances where the existence of particular facts is not of common knowledge, but is peculiarly within the knowledge of men whose experience or study enables them to speak with authority. If, with such facts before it, the jury is able to form a conclusion therefrom, it is the sole province of the jury to do so. The other class comprises those cases where not only the knowledge of the facts, but also the conclusions to be drawn therefrom, depend on professional and scientific knowledge or skill. In such cases, qualified experts may testify both as to the facts and as to the conclusions. 11 R.C.L. 573."

There is no medical evidence that all of the back injuries to respondent were caused by the accident of March 17, 1949; nor is there any such evidence that any one of the three injuries to respondent's back was caused by the accident.

Appellant, from this, contends that the verdict of the jury was based on speculation and conjecture, and that this court should order a new trial. He apparently believes that the instant case is of the class described in *Hill v. Great Northern Life Ins. Co., supra,* which would require expert testimony respecting both the cause of the respondent's injury, or injuries, and the nature of respondent's injuries.

Contrary to appellant's contention, it is well within the ability of the jury, without the aid of expert testimony, to determine from the facts relative to the automobile accident whether a person injured in the accident received one or many bodily injuries. Appellant's medical testimony was to the effect that this automobile accident could not have caused all of respondent's injuries. Though, for purposes of argument, it may be admitted that a single blow from a club could not have caused all of respondent's injuries, we believe that the jury could have found that this single automobile accident caused all, some, or none of the injuries of which this respondent complains. In an automobile collision a person is not necessarily subjected to but one sharp blow. He may be shaken about the interior of the car and come into forcible contact with a number of projections usually found in the interiors of automobiles. In view of the foregoing, we cannot hold that the verdict of the jury was speculative or conjectural.

Before passing on to another point in this discussion, an interesting commentary on the place, function, or purpose of medical testimony from *Eddy v. Spelger & Hurlbut,* 117 Wash. 632, 634, 201 Pac. 898, is quoted as follows:

"It is next urged the court was in error in allowing the doctor who had examined the respondent after the accident to testify that the respondent had been first struck at a discolored place upon her back. One of the material questions in the case for the jury to determine was the position of the respondent at the time she was struck, that is, whether she was facing the truck or whether she had been struck by it while crossing the street and when she could not see it. The testimony showed that there were a great many discolorations and bruises upon the respondent's body and that expert opinion could not determine which one of these dis-

460

colorations or bruises was made by the initial impact of the automobile. It was, therefore, *error to allow the doctor, who had not been an eye-witness of the accident, to testify as to his opinion* in regard to the matter. While this error may not been been sufficiently prejudicial of itself to entitle the appellant to a new trial, it was, nevertheless, error." (Italics ours.)

Considering the preceding quotation, it could be said that it might have been error to have allowed appellant's doctor to testify, as an expert, that respondent's three injuries to her back could not have resulted from the one automobile accident.

■ Appellant finally requests a new trial, contending that the award of ten thousand dollars to respondent by the jury was excessive and the result of passion or prejudice. During cross-examination *by appellant,* one of respondent's witnesses stated: *"I was under the impression that she had been to see somebody because of Mr. Hayman, the adjuster."* This was merely incidental testimony, was prompted by questions of appellant's counsel, and was not prejudicial. *Thompson v. Collins,* 139 Wash. 401, 405, 247 Pac. 458. Appellant further complains that the jury was swayed by respondent's weeping while on the witness stand. An examination of the record reveals that there was but one such incident. It appears to have been spontaneous and unintentional and does not require an order from this court for a new trial. *Connell v. Seattle, Renton & Southern Railway Co.,* 47 Wash. 510, 92 Pac. 377.

■ Finally, this court will not order a new trial based upon appellant's contention that the ten-thousand-dollar verdict awarded respondent is excessive. Before we will interfere with the jury's verdict, the award must be so grossly excessive as to be without support in the evidence. *Carlson v. P. F. Collier & Son Corp.,* 190 Wash. 301, 321, 67 P. (2d) 842. In the case here on appeal, the jury could have found that the respondent sustained the injuries set forth above; that she was the sole support of her family; that as a result of the automobile accident she could not carry on the duties of her teaching profession; and that she had a life expectancy

of 26.01 years. In view of the possibility that the jury could have made these findings, and especially considering the decline in the purchasing power of money (*Thompson v. Seattle*, 35 Wn. (2d) 124, 127, 211 P. (2d) 500), we are not inclined to hold that this award was grossly excessive. This conclusion is strengthened by our statement in *Coppo v. Van Wieringen*, 36 Wn. (2d) 120, 122, 217 P. (2d) 294, reading as follows:

"When a new trial is denied, a judgment is entered and the appeal is from that judgment, and there may be numerous assignments of error raising questions of fact and law . . . When questions of fact are concerned in such a situation, the inquiry of this court is focused upon the verdict of the jury, *reinforced by the trial judge's approval* (or, if not approval, his recognition that there is no reason why the verdict should be set aside), and the question before us is: Should the verdict of the jury be set aside?" (Italics ours.)

The judgment of the trial court is affirmed.

MALLERY, HILL, GRADY, WEAVER, and OLSON, JJ., concur.

DONWORTH, J. (dissenting in part)—I agree with the majority opinion in holding that the evidence relating to appellant's forfeiture of bail was erroneously admitted, but cannot agree with the holding that its admission did not constitute reversible error.

In my opinion, it is impossible for this court to determine from the record whether the jury was unduly influenced by this inadmissible evidence in returning its verdict and, therefore, its admission must be deemed prejudicial to appellant.

A somewhat analogous situation was presented in *Lundberg v. Baumgartner*, 5 Wn. (2d) 619, 106 P. (2d) 566, where a pedestrian had been killed by being struck by an automobile. In an action for wrongful death the driver of the car contended that the deceased was intoxicated at the time of the accident. Police officers were permitted to testify that on two occasions seven or eight months prior to the accident the decedent had been arrested for being intoxicated. After a verdict in favor of the defendant the

administratrix appealed contending that the admission of this evidence constituted reversible error. In sustaining this contention and remanding the case for a new trial, this court said:

"The next question for consideration is whether the testimony regarding decedent's arrests was so prejudicial to appellant as to constitute reversible error.

"Lay jurors, as a rule, do not readily distinguish between an arrest and a conviction and are, therefore, prone to assume that, because a man has been taken into custody or to jail by the police, he must necessarily be guilty of some criminal misconduct. Moreover, the fact that the decedent had been arrested might well have caused the jurors to infer a greater degree of intoxication on his part than would otherwise have been the case. To be 'under the influence' of liquor is one thing, but to be so drunk as to necessitate arrest by police officers is something quite different.

"Can it be said, then, that considering its bearing upon the decisive issues of the case and the manner in which it was brought to the attention of the jury, the objectionable testimony did not substantially affect the jury's verdict?"

After discussing the nature of the testimony objected to by appellant, we concluded as follows:

"The testimony as to the arrests was thus brought to the attention of the jury in such a way as to indicate that it did have a bearing upon the decedent's condition as to insobriety at the time of the accident. There was nothing in the course of the trial, either in the court's instructions or otherwise, to indicate to the jury that the testimony should not have been considered in that connection. Under the circumstances, the testimony was prejudicial to the appellant, and its reception and retention in evidence constituted reversible error under the principles stated in 5 C. J. S. 973, § 1724, as follows:

" 'On the other hand, error in admitting evidence may be deemed to be prejudicial where it is impossible to determine in the particular case whether or not the jury were, in the admission of the evidence complained of, unduly influenced in reaching the verdict which was actually returned in the lower court. . . . At all events, error in admitting evidence in any particular case will more readily be deemed to be prejudicial and to require a reversal . . . where the manner of admitting particular evidence or the nature

thereof is peculiarly such as to create a situation prejudicial to the party against whom such evidence is introduced, . . .'"

It is pointed out in the majority opinion that the police officer testified to certain damning admissions made by appellant immediately after the accident, in view of which the testimony regarding the traffic ticket, bail and forfeiture should be considered only as cumulative. In my opinion, this court cannot speculate as to the weight given by the jury to this inadmissible testimony.

Here, a jury of laymen might readily have inferred from this testimony that this accident had been investigated by an officer of the law who came to the conclusion that appellant was guilty of negligent driving at the time of the accident, that appellant was formally charged with that offense and that he had so little confidence in his defense that he defaulted and let his bail be forfeited rather than stand trial as he would have done if he had had any substantial defense.

It is to be noted that the principal issue which the jury was required to decide upon all the evidence admitted by the trial court was precisely the same as the issue involved in the criminal charge, to wit, was appellant guilty of negligent driving at the time of the accident? His failure to defend that charge may have indicated to the jury that he had no confidence in his defense to either the civil or criminal charge of negligent driving.

Under the circumstances here presented, the following language from *State v. Nist,* 66 Wash. 55, 118 Pac. 920, Ann. Cas. 1913C, 409, is applicable to this case:

"The state's learned counsel, however, contend that there was an abundance of evidence to sustain the conviction outside of the objectionable evidence, and argue that its admission is, for that reason, not so far prejudicial as to require a reversal. But this court has no means of knowing what effect the erroneous evidence had upon the minds of the jury. It may have been the controlling factor that induced the verdict of guilty. Before the erroneous introduction of evidence can be regarded as nonprejudicial, it must clearly appear that it is so."

Since we have no means of knowing what effect the evidence erroneously admitted had on the minds of the jury in this case, I think that its admission was not only error but was also prejudicial to appellant and that a new trial should be granted.

SCHWELLENBACH, C. J., and HAMLEY, J., concur with DON-WORTH, J.

