[No. 37408. En Banc. November 5, 1964.]

THE STATE OF WASHINGTON, *Respondent,* v. REINHART HENRY NELSON, *Appellant.*[*]

[*]Reported in 396 P. (2d) 540.

*Schumacher & Charette,* for appellant.

*L. Edward Brown, Paul B. Fournier,* and *Orville E. Peebles,* for respondent.

HILL, J.—Reinhart Henry Nelson, John Thomas Patrick, Jr., and Alberta Russell Burns were jointly charged with murder in the first degree in that they,

" . . . while engaged in the commission of or in withdrawing from the scene of the crimes of Attempted Burglary in the First Degree, or Attempted Robbery, did . . . shoot . . . into the body of . . . Dan Damitio, . . . then and there mortally wounding the said Dan Damitio . . ."

Patrick entered a plea of guilty to the reduced charge of murder in the second degree, and received a penitentiary sentence. Mrs. Burns entered a plea to the reduced charge of burglary in the second degree, and received a probationary sentence. Nelson, the only one of the trio who went to trial, was found guilty of murder in the first degree. From the judgment and life sentence entered on the verdict of the jury, Nelson appeals.

No question is raised as to the sufficiency of the evidence to sustain the verdict; but for trial errors hereinafter discussed, a new trial must be granted.

The state's theory was that the three named had driven on a dark and rainy night to the home of Daniel E. Damitio to take his money. Mrs. Burns stayed in the car with the motor running; Patrick and Nelson, the former armed with a rifle, left the car. After unsuccessful attempts to gain admission to the Damitio home, Nelson threw a piece of wood through a window to get Damitio to come to the door and thus enable Patrick to hit him. Damitio came out shooting, seriously wounding Nelson and creasing the knuckles of Patrick's left hand; the latter shot and killed Damitio.

The trial court permitted the details of a confession—made by Patrick out of the presence of Nelson—to be given to the jury. Patrick claimed the protection of the Fifth Amendment except as to his name and the fact that he had entered a plea of guilty to murder in the second degree; and this confession was the only intelligible account presented by the state of what happened on the evening of the shooting and of Nelson's participation therein. (Mrs.

Burns testified for the state; but she had remained in the car and, because of the darkness and the rain, saw nothing that happened outside of the car.)

This confession was clearly hearsay, insofar as Nelson was concerned; and he was deprived of any opportunity to confront and cross examine the individual who made the confession. Its admission was prejudicial error and requires a reversal. *State v. McCullum* (1897), 18 Wash. 394, 51 Pac. 1044; *State v. Nist* (1917), 66 Wash. 55, 118 Pac. 920.

Had Patrick been on trial with Nelson, the confession would have been admissible against Patrick, but not against Nelson; and the court would have been required to give the jury a limiting instruction stating that it could not be considered as any evidence of the guilt of Nelson. *State v. Badda* (1963), 63 Wn. (2d) 176, 385 P. (2d) 859; *State v. Goodwin* (1947), 29 Wn. (2d) 276, 186 P. (2d) 935.

The trial court did give such an instruction, but since Patrick was not on trial we see no justification for the admission of the confession.

The theory on which the trial court admitted the testimony relative to the Patrick confession and gave the instruction to which we have referred, was that since Patrick pulled the trigger of the gun which killed Damitio, he was the principal and Nelson was only an "aider and abettor"; and, hence, evidence which would be admissible against the principal, if tried alone, would be admissible on the trial of the aider and abettor in order to prove that the principal crime was actually committed. In support of this argument and this rule, the state relies on the *Mann*,[1] *Lyda*,[2] *Bixby*[3] and *Barry*[4] cases.

---

[1]*State v. Mann* (1905), 39 Wash. 144, 81 Pac. 561. Nettie Mann was charged with arson in that she set fire to and burned a two story house. The same information charged that John Mann

"'. . . though not personally present at the time said building was fired, did . . . maliciously procure, aid, counsel, incite, command and abet the said Nettie Mann to . . . fire and burn the said two story building, . . .'"

The confession of Nettie Mann, that she had set the fire, was admitted in evidence against John Mann because, in order to convict him of aiding and abetting her, it was necessary for the state to prove that

■  We have analyzed these cases at some length in the footnotes. They support the rule asserted for aider-and-abettor cases, but not its application to the present case.

she committed the crime of arson; and, then, that he aided and abetted her therein. Her confession was admitted to prove that the crime of arson was committed. John Mann was not present when the arson was committed.

²*State v. Lyda* (1924), 129 Wash. 298, 225 Pac. 55. Sawyer burned certain hay. Lyda was charged with arson in the second degree in that he did feloniously " 'encourage, advise, induce, aid, assist, abet and procure' " Sawyer to set fire and burn the hay. Lyda was not present when Sawyer set fire to the hay.

It was conceded that a portion of Sawyer's confession was relevant and admissible to show that hay was burned and so much of the confession as to make this intelligible was admissible.

It was stated, however, that in such a situation the party whose rights may be prejudiced by such evidence is entitled to have it limited to the very issue to which it is relevant and competent and to have it wholly excluded from consideration with reference to any other issue in the case.

A new trial was granted because it was reversible error to receive in evidence statements and recitals by Sawyer as to the defendant's acts in aiding and abetting in the offense when such statements were hearsay and could have been easily omitted without lessening the force of the confession against Sawyer.

³*State v. Bixby* (1947), 27 Wn. (2d) 144, 177 P. (2d) 689. Bixby was charged and convicted of subornation of perjury. He was accused of inducing the prosecutrix in a rape case to testify falsely that she had not had sexual intercourse with the accused. A juvenile court judge was permitted to testify concerning admissions made by the prosecutrix, at a juvenile court hearing, as to her relations with the defendant in the rape case. This went solely to the issue of whether perjury had been committed, and involved nothing that Bixby had done.

We there did no more than indicate that although subornation of perjury was an offense separate and distinct from perjury, still, as to the perjury, the suborner is an accessory before the fact; and then applied the rule that testimony, which would have been admissible against the principal to prove the perpetration of the principal crime, is admissible against the suborner to prove that perjury was actually committed.

⁴*State v. Barry* (1953), 43 Wn. (2d) 807, 264 P. (2d) 233. One Byrne was charged, by information, with the crime of grand larceny by means of fraudulent representations and by trick, device and bunco. Appellant Barry was charged with aiding and abetting him and knowingly receiving and concealing a part of the money wrongfully appropriated. Byrne and Barry were tried jointly.

Shortly before the state closed its case, Byrne entered a plea of

In each of the cited cases, except *Bixby*, the defendant was an aider and abettor who did not participate in the principal crime, and he was specifically charged as an aider and abettor. Bixby was charged with subornation of perjury.

Nelson was never charged as an aider and abettor, but was properly charged jointly with Patrick and Mrs. Burns as an active participant in an attempted robbery or burglary which culminated in a murder. The evidence as to what occurred at the time and place of the killing would prove the guilt of all. Nelson was not an accessory before the fact, as in the *Mann, Lyda,* and *Barry* cases, nor a suborner of perjury as in the *Bixby* case.

To justify its use of the hearsay testimony, the state has attempted to apply, in this case, the holdings in the *Mann, Lyda, Bixby,* and *Barry* cases on the purely technical reasoning that Nelson, because he did not fire the gun which killed Damitio, was merely an aider and abettor.[5]

The same specious reasoning was urged on the court in *State v. Beebe* (1912), 66 Wash. 463, 120 Pac. 122, and was rejected. In that case, Mrs. Beebe and Mrs. Totten built a fence across a road and stood guard nearby, Mrs. Totten carrying a shotgun. James Sutton started to remove the fence, became involved in a dispute with Mrs. Beebe, and was shot and killed by Mrs. Totten. The women were jointly charged with murder, but were granted separate trials. At the trial of Mrs. Beebe, the court admitted testimony that Mrs. Totten had made threats against the Sutton

---

guilty. He did not testify. It being an actual aider-and-abettor case and Barry being charged as such, the evidence of other participants in the bunco game was admitted to prove that the principal crime of grand larceny was committed. The court said:

"Here no confession by Byrne was involved. The evidence objected to by appellant was relevant to one of the issues of the case, to wit, whether or not the principal crime had been committed, and was not violative of the hearsay rule. . . ." (p. 814)

The *Barry* case has no value as precedent in the instant case.

[5](Just how, on this theory, the state justifies its effort to uphold a conviction of murder in the first degree for Nelson, who it is now claimed was only an aider and abettor, while the principal who fired the murder weapon is only guilty of second degree murder, is not clear.)

family, which threats were out of the presence of Mrs. Beebe and, therefore, hearsay as to her. The conviction of Mrs. Beebe was reversed because of the admission of this hearsay testimony, and we there discussed the *Mann* case and pointed out why the rule on which the state relies was applicable to aiders and abettors where it was sought to connect the accused with the crime by prior acts, but was not applicable in the situation of joint participants and acts committed at the time and place the crime was consummated.[6]

No act is charged against Nelson, save such as occurred at the time and place of the consummation of the crime. The cases relied on by the state simply have no applicability to the case at bar.

The second assignment of error relates to the admission of other hearsay testimony. This was all testimony which would have been admissible against Patrick. Some of it tended to show that Patrick knew that Damitio had money and that Patrick had, at other times, contemplated robbing him.

This testimony was also admitted on the same theory as the Patrick confession: That evidence which was admissible against Patrick was also admissible against Nelson, in that it established the principal crime as to which Nelson was an aider and abettor.

Nothing further needs to be added to what we have previously said about that theory; and, for the reasons given in our discussion of the first assignment of error, we hold that the admission of the testimony of statements made by Patrick, out of the presence of the defendant, constituted prejudicial error.

The next assignment of error is that there should not have been admitted in evidence Patrick's gun (the murder weapon), together with the brown gloves worn by Patrick, the white gloves worn by Nelson, and the nylon stockings

---

[6]As originally drafted, this opinion quoted the better part of 3 pages from the opinion of *State v. Beebe;* however, the repetition of what is available for all to read seems unnecessary. See pages 467, 468 and 469 of 66 Wash., and pages 124 and 125 of 120 Pac.

(to be worn as masks) purchased by Mrs. Burns. These were all found in the Patrick car in which Nelson, Patrick, and Mrs. Burns had been riding at the time of the murder.

These articles were obviously material and relevant, but their admission was resisted on the basis that the state obtained possession of them by an unlawful search and seizure. What the procedure and the testimony might be on another trial, relative to the justification of the search and seizure of the Patrick car, we cannot tell. What the law relative to search and seizure and the admissibility of the evidence secured thereby may be, we can only wonder. There can, however, be no excuse for a failure by the defense to make a timely motion to suppress the evidence.

The trial court did not err in permitting Mrs. Burns to invoke her privilege under the fifth amendment to the United States Constitution, or in refusing to strike her direct testimony. Mrs. Burns testified for the state. She had accompanied Nelson and Patrick to the Damitio home. She had purchased the nylon stockings at Patrick's request, and testified that Nelson had been stretching one of them. She had stayed in the car with the motor running.

There was a rigorous cross-examination on the details of what happened that evening. The witness, however, claimed the privilege of the Fifth Amendment when questions were asked for the avowed purpose of showing that she had lived with Patrick for 3 years without benefit of marriage and that she was receiving public assistance during this time. The trial court correctly ruled that she could not be required to answer questions which might indicate the commission of other crimes unrelated to the one concerning which she had testified. Nor did the trial court abuse its discretion in failing to strike her testimony. Her cross-examination had been unrestricted; as to her participation in the crime for which the defendant was being tried; and that which was not permitted related to collateral and unrelated matters.

Nor do we believe that the trial court erred in permitting Patrick to be called by the state, even though the court knew that he would invoke the Fifth Amendment.

There were questions which Patrick could have been required to answer without incriminating himself in anything but the shooting of Damitio to whose murder (second degree) he had already entered a plea of guilty and for which he could not again be prosecuted.

The Fifth Amendment is not a blanket which precludes all questioning; it gives a privilege which must be claimed. The examination of Mrs. Burns, which we have discussed, demonstrates that the constitutional rights of a witness can be protected under the Fifth Amendment and yet have the witness examined and cross-examined at considerable length.

The situation here, with reference to Patrick, seems to point up how seriously the prosecution can be handicapped by the lack of a statute which would enable it to grant immunity to prosecution, for certain offenses, to witnesses who might otherwise rely on the Fifth Amendment[7] or its counterpart in our state constitution (Art. I § 9)[7] to avoid testifying.

We agree with the appellant that Sheriff Simmons should not have been permitted to testify concerning Nelson's refusal to comment to a statement made by the sheriff. Nelson was under no duty to speak. Inasmuch as a new trial is being granted for other reasons, we do not need to consider whether the trial court corrected the error by striking the testimony, or whether, under the circumstances, the error was prejudicial.

The next three assignments of error have to do with the propriety of four instructions given and one refused.

Of the four instructions complained of, the ones on justifiable homicide and self defense seem to have been unnecessary, as these issues were not in the case; but we see no prejudicial error insofar as these instructions were concerned. The only question of interest beyond this par-

---

[7] U. S. Const. Fifth Amendment reads: "No person . . . shall be compelled in any criminal case to be a witness against himself, . . ."

Const. Art. I § 9 reads: "No person shall be compelled in any criminal case to give evidence against himself, . . ."

ticular case is the challenge that instruction No. 19[8] destroys the presumption of innocence and creates a presumption of guilt.

This instruction was given as part of a longer instruction in *State v. Myers* (1959), 53 Wn. (2d) 446, 447, 334 P. (2d) 536, and was there upheld against the objection that it was a comment on the evidence.

In the very recent case of *State v. Mays* (1964), *ante* p. 58, 395 P. (2d) 758, the trial court, in instructing relative to second degree murder and insanity, stated in each instruction that every sane person is presumed to intend the natural consequences of his voluntary acts. We there met head on the contention made here, and held that this language simply reflected the idea of personal responsibility on which our society is founded and did not interfere with the traditional presumption of innocence: We there said:

"When we say that the law *presumes* that every sane person intends the natural, ordinary and usual consequences of his acts, as set forth in instruction 15, it is but another way of asserting that the law so deems it; and it is one way of declaring the rule of personal responsibility by which all members of a civilized society must be bound. The same reason supports instruction 19 in which it is said that every man is *presumed* to be mentally responsible or sane until the contrary is shown by a preponderance of the evidence. Here, too, the use of the word *presumed* is simply one way of saying that one is deemed or held in law to be sane until by a preponderance of the evidence mental irresponsibility is shown. Neither instruction, when considered in pari materia with the court's whole charge to the jury, in any way trespasses upon, curtails or impairs the presumption of innocence nor, as we see it, does either instruction assert a fact requiring evidence to overcome. . . ."

---

[8] "The Court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts. It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case." Instruction No. 19.

The trial court did not err in refusing to give either of the appellant's proposed instructions on the "hypothesis of innocence." The argument in appellant's brief is about "two reasonable hypotheses, one of guilt and one of innocence." His proposed instructions made no reference to reasonableness, and, as the state points out, their effect would have been to instruct the jury to adopt any conceivable hypothesis of innocence.

For the errors relative to the admission of hearsay testimony heretofore discussed, the judgment of conviction appealed from is set aside and a new trial is granted Reinhart Henry Nelson.

ALL CONCUR.

\*Reported in 396 P. (2d) 537.