[No. 39529.    Department Two.    February 29, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY McLAUGHLIN, *Appellant*.*

*John Neikirk*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Thomas S. Wampold*, for respondent.

*Reported in 437 P.2d 902.

HILL, J.—The defendant, Jerry McLaughlin, appeals from a conviction of grand larceny.

He urges that at the time of trial he was only 17 years old; that the juvenile court erred in declining jurisdiction, and that he was never given a proper hearing on whether or not he should be tried as an adult.

With reference to his trial as an adult, he urges that there was a failure of proof; and that, in any event, there were trial errors which entitled him to a new trial.

We shall consider first his assignments of error with reference to his trial under the provisions of the criminal code as an adult, because, now being 18 years of age, the net result from any failure of due process in the juvenile court would be to wipe out his conviction and grant him a new trial as an adult. *In re Dillenburg v Maxwell,* 70 Wn.2d 331, 413 P.2d 940, 422 P.2d 783. (1966-67). If, as the result of this appeal from his present conviction, the charge on which he was convicted was dismissed or a new trial granted, there would be no necessity of considering the proceedings in the juvenile court because he would have had all the benefits which he could (in his present adult status) have secured through any review of the juvenile court's declining to exercise its jurisdiction.

It is urged that defendant's motion to dismiss for failure of proof should have been granted. The evidence as to count 1 (grand larceny) was that certain plumbing tools had been stolen October 13, 1966. The defendant together with a young friend, James DeLoach, brought the stolen tools to "Irv's Jewelry" on October 14, 1966.

DeLoach told the owner of that establishment, Mr. Irving Ginsberg, that the tools had belonged to his deceased father. When DeLoach was asked for identification establishing that he was over 21 years of age, he had none; and the defendant volunteered to sign the ledger sheet[1] kept by Mr.

---

[1]This ledger was set up so that four transactions could be recorded on a page; the article sold or pawned was described. The person selling or pawning an article signed his name, gave his address and age; information relative to height, weight, "complexion," and clothes was also entered.

Ginsberg, and did, giving his age as 24. The defendant offered identification cards belonging to his deceased brother, Phillip, showing a birth date of August 23, 1942.

On this appeal it is urged in behalf of the defendant-appellant:

> A conviction for grand larceny is too drastic a penalty for merely signing a book. By signing the book, a confused boy was only trying to assert his manhood and demonstrate his competency in the frightening world of adults. . . . he did not represent himself as the owner or possessor of the tools, . . . he believed the tools belonged to DeLoach, and had no intent to deprive anyone of property. He did nothing more than volunteer to sign a record for a companion.

This interpretation of defendant-appellant's actions is no more than an excellent jury argument—an argument the jury did not buy. The jury was entitled to find from the evidence that this was no confused boy trying to assert his manhood, but a purposeful and resourceful mature youth, working as a longshoreman, claiming to be 24 years old, frequenting a "Go-Go" tavern,[2] and assisting in the disposal of what he knew to be stolen goods.

Another assignment of error also involved the companion DeLoach who, after having testified to meeting the defendant on the morning of October 14, 1966, claimed the Fifth Amendment privilege with relation to questions—the answers to which he believed might incriminate him. The privilege was claimed only twice in some four pages of direct examination by defense counsel. In both instances, the trial court ruled that he need not answer. The defendant-appellant urges that these rulings were erroneous, because by having answered some questions, DeLoach had waived his right to invoke the Fifth Amendment privilege.

■ It should be pointed out that the defendant knew when he offered DeLoach as a witness that the latter would

---

[2] We assume no elucidation is necessary at this time, but if in some remote day a reader is curious regarding the character and significance of such an establishment (circa A.D. 1967), we would refer him to *In re Golden Bar, Inc. v. Pennsylvania Liquor Control Board,* 193 Pa. Super. 400, 165 A.2d 285 (1960).

invoke the Fifth Amendment privilege. (This was made abundantly clear by a lengthy colloquy between DeLoach's attorney, who accompanied him to court, and the trial court.) It is within the discretion of the trial court to determine whether an answer to a question has a tendency to incriminate the witness. *State v. James,* 36 Wn.2d 882, 221 P.2d 482 (1950). There is nothing in this record to support any claim of abuse of discretion in the rulings of the trial court on the claims of privilege made by DeLoach.

The defendant cites no authority supporting his claim that the witness, having answered some questions, must answer all. The short answer to that claim is found in *State v. Nelson,* 65 Wn.2d 189, 197, 396 P.2d 540 (1964), where we said:

> The Fifth Amendment is not a blanket which precludes all questioning; it gives a privilege which must be claimed. The examination of Mrs. Burns, which we have discussed, demonstrates that the constitutional rights of a witness can be protected under the Fifth Amendment and yet have the witness examined and cross-examined at considerable length.

Three other assignments of error relate to exhibits.

It is urged that the trial court erred in denying defendant's motion for a mistrial for the reason that the jury heard evidence of a transaction similar to count No. 1 (the grand larceny charge relating to the plumbing tools).

Mr. Ginsberg, in his testimony, was identifying the entries in his ledger with reference to the plumbing tools brought in on the morning of October 14, 1966. It developed that the transaction immediately preceding that on the full ledger page offered as exhibit No. 9, involved an item which the defendant had brought in on the evening of October 13. There was no suggestion that this item was stolen property, and further, that portion of the ledger page relating to the plumbing tools was cut off the full page and admitted as exhibit No. 10 with exhibit No. 9 originally offered not going to the jury. There was nothing before the jury from which it could have drawn an inference from

this incident that the defendant had committed some other crime.

Error is also claimed in that there were certain marks in red ink placed on exhibits Nos. 8 and 10 by the Pawnshop Detail of the Seattle Police Force. These markings were unintelligible to anyone except the Pawnshop Detail. It is urged that the exhibits should not have been admitted because of the markings. (Exhibit No. 8 was the ledger sheet from Mr. Ginsberg's records which the defendant had signed when the golf clubs, bag and cart were left with Mr. Ginsberg. These items formed the basis for count 2 (petit larceny); and exhibit No. 10 was the portion of the ledger sheet which the defendant had signed when the plumbing tools were left with Mr. Ginsberg, which items formed the basis for count 1.) The jury was instructed to disregard the red markings. It is our view that they added nothing to, or subtracted nothing from the weight of the evidence.

It is also urged that the court erred in allowing a witness to refer to unadmitted exhibits in his testimony.

The unadmitted exhibits contained signatures that were identified as those of the defendant. Detective C. G. Kelson testified that the same person who signed the unadmitted exhibits, signed exhibits Nos. 8 and 10 (the pawnshop ledger sheets). Whatever the effect on the admissibility of Kelson's testimony might be as a result of his reference to unadmitted exhibits, became immaterial. It developed that his testimony as to handwriting was unnecessary. Mr. Ginsberg testified that the defendant signed exhibits Nos. 8 and 10; the defendant admitted that he signed them. What more was needed?

We have now discussed all assignments of error relating to the trial of the defendant, and find no prejudicial error.

There remains for consideration whether the juvenile court should have declined to exercise its jurisdiction, the defendant being then under 18 years of age, i.e., 17 years, 4 months.

We recently had occasion in *In re Dillenburg, supra,* to make clear the limited sense in which we use the word "jurisdiction" (for want of a better one), in considering the

manner in which it is determined whether the more mature juveniles charged with criminal offenses are to be handled in the "juvenile court session" (see RCW 13.04.030) of the superior court, or whether they are to be tried as adults. These limitations are to be kept in mind when we refer to "jurisdiction" in this opinion.

The defendant was represented by retained counsel both at the hearing at which the juvenile court declined jurisdiction on the charge involving the plumbing tools (grand larceny) and at the actual trial in the superior court.

There is some contention that neither the defendant nor his mother (with whom he was living; mother divorced from father) was notified that the juvenile court hearing on October 27, 1966, was to be a declination hearing. Be that as it may, the defendant, his mother, and retained counsel were present; a probation officer also appeared on behalf of the defendant. The juvenile court's order, after stating the offense alleged to have been committed, continues:

[T]estimony having been taken in Court upon oath from W. Clancy of Seattle Police; Gary Allard, Juvenile Parole Counselor; and said child and his mother, Bernice McLaughlin and G. Jorvie of Seattle Police being present and sworn only

Counsel Frank Sullivan appearing in behalf of said mother and child, and the Court having considered all said matters, now makes the following:

FINDINGS OF FACT

The alleged offense should be heard in one court by reason of the juvenile's associates in the alleged offense being adults who will be charged with a crime; the sophistication and maturity of the juvenile by consideration of the investigation as shown of his home, environmental situation, emotional attitude and pattern of living is such he should be treated as an adult; the previous record and history of the above minor including previous contacts with law enforcement agencies, Juvenile Courts and other jurisdictions indicate no beneficial resources available to said minor through the Juvenile Department of this Court; a prior period of probation has been previously afforded and a prior commitment to a juvenile institution has been made; that there are no further re-

sources available in the juvenile department of this Court;

From the foregoing FINDINGS OF FACT the Court now makes the following

CONCLUSIONS OF LAW

That it would be for the best welfare of the above-entitled juvenile and the community that this Court should decline jurisdiction.

Based on these findings and conclusions, the court declined jurisdiction and turned the defendant over to the law enforcement authorities. This order was approved as to form by the retained counsel, signing as "attorney for child and mother."

There is nothing before us to indicate that any surprise was claimed; that any continuance was asked; or that retained counsel was in any way restricted in his cross-examination of witnesses, or his representation of the child and the mother.

The same retained counsel represented the defendant at the superior court trial, and there is no suggestion that counsel was claiming that there had been any error or mistake in the declination of jurisdiction by the superior court on the charge involving the plumbing tools. Counsel did object to any evidence as to count 2 because there had been no declination of jurisdiction on the offense charged in that count, i.e., petit larceny, which involved the taking and disposing of certain golf clubs, a golf bag and cart.

We are satisfied that the juvenile court did not err in declining jurisdiction on the charge relative to the plumbing tools. Only a week earlier—on the 20th of October, 1966 —the juvenile court had entered a similar order with reference to the stealing of an automobile by the defendant. The defendant was then also represented by retained counsel. His mother and a brother were present and testified. The same court commissioner entered both orders, and on October 27, 1966, he was obviously familiar with the defendant, his family, and all the circumstances.

There remains for consideration the defendant's objection, to which we have referred, relative to there being no

order of declination by the juvenile court on the offense charged in count 2 of the information. The circumstances were somewhat similar to count 1, except that the items brought to Ginsberg by DeLoach and the defendant were golf clubs, a golf bag and cart, all of which were of a value of less than $75.

When the absence of any order of declination was brought to the attention of the trial court, there was a colloquy in the absence of the jury. The trial court, after having indicated its belief that the original order of declination was sufficient to cover the petit larceny count (though the only offense to which reference was made involved "plumber tools"), said:

[B]ut presuming for the sake of argument it doesn't, I will exercise my authority as Juvenile Judge to complete this order to include this charge as charged in the amended Information, and I do so now.

We assume that the trial judge was one of the five judges of the Superior Court for King County selected by the judges of that court to serve as juvenile court judges (as provided by Rule 6 of the Superior Court for King County); but we question the propriety of the time and place of the action in view of the language of the Juvenile Court Law.[3] The state argues that a declination was unnecessary on the petit larceny count, the waiver entered being over the person rather than over a specific offense.[4]

■ Our view is: the defendant having been acquitted on the petit larceny count, we need not decide at this time whether a declination was necessary on that count or

---

[3] ". . . the judges of the superior court [in counties having more than thirty thousand inhabitants] shall, at such times as they may determine, designate one or more of their number whose duty it shall be to hear all cases arising under this chapter. A special session to be designated as the 'juvenile court session' shall be provided for the hearing of such cases . . ." (RCW 13.04.030)

". . . and such cases shall not be heard in conjunction with other business of the court. . . ." (RCW 13.04.091)

[4] We have heretofore referred to an earlier order of declination in a car-theft charge, which would indicate a different view by the King County Juvenile Court.

whether, if necessary, it was properly done. The acquittal on that count makes these questions moot. The only appeal is from the grand larceny conviction on which there was a proper declination.

The conviction is affirmed.

FINLEY, C. J., HAMILTON and NEILL, JJ., and LANGENBACH, J. Pro Tem, concur.